S00A0140. EMPLOYEES' RETIREMENT SYSTEM OF GEORGIA et al. v. MARTIN et al.
S00X0141. MARTIN et al. v. EMPLOYEES' RETIREMENT SYSTEM OF GEORGIA et al.
(533 SE2d 68)

SEARS, Justice.

This appeal and cross-appeal raise numerous issues concerning the retirement benefits that former employees of the Fulton County Department of Family & Children Services ("Fulton DFCS") who transferred to state employment after July 1, 1982, are entitled to

under the Employees' Retirement System of Georgia ("ERS"). In the direct appeal, the ERS contends that the trial court erred in ruling that a retirement statute violated equal protection by providing significantly reduced retirement benefits to such employees compared to former employees of Fulton DFCS who transferred to state employment before July 1, 1982. On cross-appeal, the former employees claim that the trial court erred in ruling against the former employees' claims that the ERS had breached its contract with the former employees and was estopped to deny the former employees the benefits to which they claimed they were entitled. Regarding the direct appeal, we conclude that the trial court properly ruled that the retirement plan violated the equal protection rights of the employees in question. Therefore, the former employees' cross-appeal is moot and must be dismissed.

The 40 appellees in Case No. S00A0140 and cross-appellants in S00X0141 were all employed by Fulton DFCS before July 1, 1982 (hereinafter referred to as "former employees"). While employed at Fulton DFCS, the former employees were considered full-time state employees, but were members of the Fulton County Employees' Retirement System ("FCERS"). After July 1, 1982, the former employees became employed in various other positions in state government and became members of the ERS. Under OCGA § 47-2-93, Fulton DFCS employees who had transferred to other state employment before July 1, 1982, were permitted to purchase creditable service for their prior employment at Fulton DFCS by paying to the ERS the employee contributions that the employee would have paid if he or she had been a member of the ERS during that period. In 1982, however, the General Assembly enacted OCGA § 47-2-334, which precluded the former employees, as new members of the ERS, from purchasing prior service credit.[1]

In an apparent attempt to remedy this situation, the General Assembly in 1990 enacted OCGA § 47-2-298, which gave the former employees who became ERS members the option of purchasing creditable service under the ERS for their DFCS service. To obtain the creditable service under the ERS, an employee would have to make a payment to the ERS of "a sum equal to [his] employee contributions which had been paid to the local retirement system during the years of service for which credit is being claimed."[2] In addition to the employee contribution, subsection (b) of the statute required Fulton County to make three payments to the ERS.[3] Subsection (c) of the statute also provided that "[u]pon receiving the payments provided

---

[1] See OCGA § 47-2-334 (f) (2).

[2] Former OCGA § 47-2-298 (d) (Ga. L. 1990, pp. 993, 996).

[3] Former OCGA § 47-2-298 (b) (1-3) (Ga. L. 1990, pp. 993, 994-995).

for by subsection (b) of this Code section, the board of trustees [of the ERS] shall enter the creditable service provided for by said subsection (b) upon the records of the employees."

After § 47-2-298 was enacted, the ERS notified the former employees of their right to purchase service under § 47-2-298, and each of them in turn notified the ERS that they elected to purchase service credit under that Code section, and remitted his or her required contribution. The ERS subsequently notified the plaintiffs that it had received their payments under § 47-2-298. The ERS also notified the plaintiffs of the amount of creditable service they had obtained as a result of the payment. Fulton County, however, subsequently contended that § 47-2-298 was unconstitutional and declined to make the contributions required of it. In July 1992, ERS filed a petition for mandamus against the FCERS and Fulton County to compel the required payments. The ERS then sent the plaintiffs a letter notifying them that Fulton County had not sent the required payments; that the dispute was in litigation; and that the option provided to the former employees under § 47-2-298 was conditioned upon Fulton County making the payments required by it under § 47-2-298 (b).

In 1994, the General Assembly amended § 47-2-298 by diminishing the payments that Fulton County was required to remit to the ERS.[4] Under the amended version of § 47-2-298, the former employees would receive significantly less creditable service than under the 1990 version of § 47-2-298. In 1994, ERS notified the plaintiffs of the changes to § 47-2-298, and in August 1994, the ERS voluntarily dismissed its mandamus petition against Fulton County. Furthermore, in November 1994, the ERS notified the former employees that the ERS's lawsuit against Fulton County was dismissed after the 1994 amendment to § 47-2-298, and that, because Fulton County did not remit the funds required of it under the 1990 version of § 47-2-298, there was no authority under the 1990 version of § 47-2-298 for the ERS to credit the former employees' membership account with the ERS with their Fulton DFCS service.

The former employees subsequently filed this action, asserting claims for, among other things, breach of contract, estoppel, and violation of their right to equal protection. As for the latter claim, the former employees noted that before July 1, 1982, Fulton DFCS employees who transferred to other state employment covered by ERS were able to establish creditable service under the ERS for service that had previously been credited under the FCERS before July 1982. They contended that § 47-2-334 violated their right to equal

---

[4] See Ga. L. 1994, p. 738.

protection by treating them differently from such employees, without a rational basis for doing so. The former employees also asserted an alternative claim, based upon impairment of contract and estoppel, by which they sought credit for their years of service with Fulton DFCS. As for impairment of contract, the former employees contended that the 1990 version of § 47-2-298 became a part of their contract of employment with the State, and that the 1994 version of § 47-2-298 diminished their benefits and therefore improperly impaired their employment contract. The former employees also claimed that, because the ERS accepted the former employees' contribution under the 1990 version of § 47-2-298; because the ERS notified the former employees that they had received creditable service under that Code section; and because the former employees had reasonably relied on those assurances in continuing their state employment, the ERS was estopped to deny the employees benefits under the 1990 version of § 47-2-298.

In Case No. S00A0140, the ERS appeals from the trial court's ruling in favor of the former employees on their equal protection claim. In this regard, the trial court concluded that there was no rational basis for providing former employees of Fulton DFCS who transferred to state employment on or after July 1, 1982, significantly reduced retirement benefits compared to employees of Fulton DFCS who transferred to state employment before July 1, 1982. In Case No. S00X0141, the former employees cross-appeal from the trial court's grant of summary judgment to the ERS on the former employees' claims that the ERS had breached its contract with the former employees and was estopped to deny the former employees the benefits to which they claimed they were entitled.

1. Because this case does not involve either a suspect classification or a fundamental right, we must apply a rational basis standard of review to the former employees' claim that the ERS's classification system violates equal protection.[5]

The former employees base their equal protection claim on the undisputed fact that under the relevant retirement provisions, former employees of Fulton DFCS who began to work for the state before July 1, 1982, are entitled to significantly more retirement benefits than former employees of Fulton DFCS who began work for the State after July 1, 1982. An examination of two fictional employees demonstrates this point. If one employee began work for Fulton DFCS on January 1, 1975, and transferred to another state job on June 30, 1982, he would be entitled to purchase creditable service for state retirement for all the years he worked for Fulton DFCS. If the

---

[5] *Horton v. State Employees Retirement System*, 262 Ga. 458, 459 (421 SE2d 703) (1992).

second employee also began work on January 1, 1975, for Fulton DFCS, with the identical job as the first employee, and transferred to the identical state employment as the first employee, but made the transfer on July 1, 1982, instead of on June 30, the second employee would only have the right to a small portion of the creditable service available to the first employee and would thus have significantly diminished pension benefits simply because of the date of his transfer. We conclude that these employees are similarly situated, and that they are not being treated equally. Thus, the former employees' equal protection claim turns on whether there is a rational basis for the difference in this treatment.

The ERS relies on *Fulton County School Dist. v. Sanders*[6] and *Horton v. State Employees Retirement System*[7] to contend that there is a rational basis for the disparity in treatment. In *Sanders*, the General Assembly established a pension system for the Fulton County School System that included teachers, school bus drivers, and cafeteria personnel. The pension plan required that members of the plan retire at age 65. Other teachers in the state who were employed by school systems that did not have local retirement plans were members of the Teachers' Retirement System of Georgia. The Teachers' Retirement System did not require that teachers retire until age 70, and it did not cover cafeteria personnel and school bus drivers. Sanders contended that the disparity in retirement ages under the different plans violated her right to equal protection. This Court disagreed, noting that the retirement plan for the Fulton County School System was established before the Teachers' Retirement System was created, and that, because the local retirement plan covered employees whose primary work activities were of a physical nature, whereas the Teachers' Retirement System did not cover such personnel, the choice of age 65 as the retirement age for the local system was a reasonable classification.[8]

In *Horton*, the plaintiffs challenged on equal protection grounds provisions of the retirement system that rewarded veterans of World War II, the Korean War, and the Vietnam War, with more credit toward state retirement for military service than veterans who served during times of peace. We concluded that the classifications based upon the types of military service were reasonable and "did not violate the plaintiffs' rights to equal protection."[9]

In the present case, unlike *Sanders* and *Horton*, we conclude that there is no rational basis for the disparity in treatment of the

[6] 242 Ga. 298 (248 SE2d 670) (1978).
[7] Supra.
[8] *Fulton County School Dist.* at 301-302.
[9] *Horton* at 460.

former employees. In *Sanders*, the different retirement plans in question covered employees who engaged in different types of work, thus providing a rational basis for the different retirement ages. Here, however, the former employees are part of the same retirement system as employees of Fulton DFCS who transferred to other state jobs before July 1, 1982, and all of these employees have held the same jobs for purposes of retirement benefits both before and after their transfers from Fulton DFCS to other state employment. Moreover, contrary to ERS's assertion, this Court did not hold in *Horton* that retirement classifications based upon date of membership do not violate equal protection. Rather, we held that the rational basis for providing more creditable service for certain employees was not the date of membership in the retirement system, but the types of military service that the employees had performed for this country. Again, in this case, the former employees who are being treated differently have performed the same type of work as the employees who are receiving greater benefits. For the foregoing reasons, we conclude that in this case there is no rational basis for the difference in treatment of the similarly situated employees.

Accordingly, we conclude that the trial court properly ruled in favor of the former employees on their equal protection claim.

2. Because we have resolved the direct appeal in favor of the former employees, their defensive cross-appeal is moot and must be dismissed.[10]

*Judgment affirmed in Case No. S00A0140. Appeal dismissed in Case No. S00X0141. All the Justices concur.*

DECIDED JULY 5, 2000.

*Thurbert E. Baker, Attorney General, Susan L. Rutherford, Senior Assistant Attorney General*, for appellants.
*Parks, Chesin & Miller, Larry Chesin*, for appellees.

---

[10] *Smith v. Ga. Kaolin Co.*, 269 Ga. 475, 477 (498 SE2d 266) (1998); *Welch v. Welch*, 265 Ga. 89, 91 (453 SE2d 445) (1995).