## A05A0216. ALVERSON et al. v. EMPLOYEES' RETIREMENT SYSTEM OF GEORGIA.

(613 SE2d 119)

PHIPPS, Judge.

Plaintiffs are former State of Georgia employees who retired on or before July 1, 1998, after reaching the age of 60 but with less than 30 years of creditable service.[1] They receive state pensions which were reduced by the Employees' Retirement System of Georgia (ERS) by varying percentages based on each employee's age.

Aggrieved by this reduction of their pensions, plaintiffs brought this suit charging the ERS with, among other things, breach and impairment of contract. Plaintiffs' central claim is that under OCGA §§ 47-2-110 (a) and 47-2-120 (a), they had a right to retire and receive a pension upon reaching the age of sixty with at least ten years of creditable service without any diminution in benefits as a result of their age. OCGA § 47-2-120 (e), which became effective on July 1, 1998, requires the ERS to apply an age reduction factor in calculating pensions for members who retire before reaching the age of 60 with less than 30 years creditable service. The ERS's central argument is that OCGA § 47-2-28 gives it the implied, discretionary authority to apply an age reduction factor in calculating the pensions of members who retire between the ages of 60 and 65 even with 30 years of creditable service. The ERS also argues that plaintiffs' claims are barred by the Georgia Tort Claims Act (GTCA).[2] In agreement with these arguments, the trial court awarded summary judgment to the ERS. Under the "right for any reason" rule, we affirm.

1. Plaintiffs' claims are not barred by the GTCA.

A 1991 amendment to the Georgia Constitution[3] authorized the General Assembly to enact the GTCA to waive the sovereign immunity of the state for the torts of its officers and employees.[4] The GTCA declares it to be the public policy of this state that the state shall be liable in tort actions and for tort claims only within the limitations of the GTCA.[5] The exceptions to state liability are set forth in OCGA § 50-21-24. The GTCA defines a "claim" as "any demand against the State of Georgia for money only on account of loss caused by the tort of any state officer or employee committed while acting within the

---

[1] State employees may accrue service creditable toward retirement benefits through, among other things, prior military or legislative service, forfeited annual leave, and forfeited sick leave, in addition to their actual time of employment with the state as a member of the retirement system – hence the term "creditable service." See OCGA § 47-2-90 et seq.

[2] OCGA § 50-21-20 et seq.

[3] Ga. Const. 1983, Art. I, Sec. II, Par. IX (a).

[4] *Gilbert v. Richardson*, 264 Ga. 744, 747 (2) (452 SE2d 476) (1994).

[5] OCGA § 50-21-21 (a); see also OCGA § 50-21-26.

scope of his or her official duties or employment."[6] "A tort is the unlawful violation of a private legal right other than a mere breach of contract, express or implied."[7]

(a) Even though a tort action is thus distinguished from an action for breach of contract based on the nature of the duty breached, the trial court held that under cases such as *Youngblood v. Gwinnett Rockdale Newton Community Svc. Bd.*,[8] "[t]he focus . . . is not on the duty allegedly breached by the State but on the act causing the underlying loss. . . . [Cits.]"[9] Because plaintiffs' claims are based on actions of the members of the Board of Trustees of the ERS in executing state retirement statutes, the trial court concluded that the state is exempt from liability under OCGA § 50-21-24 (1) (exempting the state from liability for losses resulting from "[a]n act or omission by a state officer or employee exercising due care in the execution of a statute, regulation, rule, or ordinance, whether or not such statute, regulation, rule, or ordinance is valid"). We find that the trial court's reliance on *Youngblood* is misplaced and that its reasoning is thus flawed.

In *Youngblood*, the Supreme Court considered the exception to state liability set forth in OCGA § 50-21-24 (7) (providing that the state shall have no liability for losses resulting from "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, or interference with contractual rights"). As recognized in *Youngblood*, "[u]nlike other subsections within OCGA § 50-21-24, subsection (7) is not limited in application to acts taken by a State officer or employee but covers all losses resulting from the torts enumerated therein."[10] The plaintiff in *Youngblood* placed her daughter in a home for the mentally disabled operated by private individuals under a contract with a government agency. Plaintiff sued the government agency, complaining that the operators of the home had assaulted and battered her daughter. Conceding that the state had not waived immunity from liability for damages caused by assault and battery, plaintiff argued that the state agency could be held liable for negligent performance of a ministerial duty (under subparagraph (d) of the 1991 constitutional amendment).[11] *Youngblood* held that because subsection (1) of OCGA § 50-21-24 applies to specified torts regardless of whether a state officer or employee is the

---

[6] OCGA § 50-21-22 (1).

[7] OCGA § 51-1-1.

[8] 273 Ga. 715 (545 SE2d 875) (2001).

[9] Id. at 717 (3).

[10] Id.

[11] Subparagraph (d) provides, in pertinent part: "Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its

tortfeasor, the focus in determining the applicability of that subsection is the act causing the loss and not the duty breached. In determining whether an action sounds in tort or contract, the focus must be on the duty breached. *Youngblood* does not hold otherwise.

(b) In reliance on *Burton v. DeKalb County*[12] and *Merk v. DeKalb County*,[13] the trial court also concluded that although plaintiffs have sought to bring this action under a breach of contract theory, it actually sounds in tort. We cannot agree. Under the line of decisions represented by *Parrish v. Employees' Retirement System of Ga.*,[14] this case sounds in contract. *Burton* and *Merk* are distinguishable.

The plaintiff in *Burton* was a state employee who slipped and fell in water that had accumulated in a building owned and maintained by DeKalb County under contract with the state. The plaintiff sued the county for injuries sustained. She sought to avoid the bar of sovereign immunity by arguing that she was suing the county for breach of its maintenance contract with the state. We rejected the argument that plaintiff had standing to sue as a third party beneficiary of the contract, holding that the action sounded in tort and was barred by sovereign immunity.

The plaintiff in *Merk* was a DeKalb County homeowner whose house was flooded by sewage. She also sued the county on a breach of contract theory, claiming that she and the county were parties to a written contract for water and sewer services established by the county code. Concluding that the county code did not contain all the necessary terms of a contract, we held that plaintiff's action, though couched in contract, actually sounded in tort and, like *Burton*, was barred by sovereign immunity.

*Parrish* recognized:

> "(A) statute or ordinance establishing a retirement plan for government employees becomes a part of an employee's contract of employment if the employee contributes at any time any amount toward the benefits he is to receive, and if the employee performs services while the law is in effect; and . . . the impairment clause of our constitution . . . precludes the application of an amendatory statute or ordinance in the calculation of the employees' retirement benefits if the effect of the amendment is to reduce rather than

---

departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform their ministerial functions. . . ."

[12] 209 Ga. App. 638 (434 SE2d 82) (1993).

[13] 226 Ga. App. 191 (486 SE2d 66) (1997).

[14] 260 Ga. 613 (398 SE2d 353) (1990).

increase the benefits payable.... (I)f the employee performs services during the effective dates of the legislation, the benefits are constitutionally vested...."[15]

In this case, therefore, unlike *Merk* or *Burton*, the plaintiffs are parties to a written contract established by the Code provisions in effect when they performed services and contributed toward their retirement benefits.[16] This case is thus aptly characterized as an action for breach of a written contract. The 1991 state constitutional amendment that authorized the General Assembly to waive the state's sovereign immunity by enacting the GTCA also waived the state's defense of sovereign immunity "as to any action ex contractu for the breach of any written contract... entered into by the state or its departments and agencies."[17] And through the enactment of OCGA § 50-21-1, the General Assembly also provided for a waiver of sovereign immunity as to actions ex contractu for the breach of written contracts. OCGA § 50-21-1 is not part of the GTCA. This case thus falls within an exception to state sovereign immunity separate and apart from the GTCA. Consequently, the trial court erred in ruling that plaintiffs' claims are barred by the GTCA.

2. The trial court did not, however, err in awarding summary judgment to the ERS on the merits of plaintiffs' claim.

The ERS was established by a 1949 Act of the General Assembly.[18] The ERS Act is currently codified at OCGA § 47-2-1 et seq. Various parts of OCGA §§ 47-2-20, 47-2-21, 47-2-26, 47-2-28, 47-2-110, and 47-2-120 are at issue here.

(a) Section 2 of the 1949 Act,[19] now codified at OCGA § 47-2-20, places management of the ERS under a Board of Trustees (the Board). Under OCGA § 47-2-21 (a), which was part of § 6 of the 1949 Act,[20] the Board is vested with responsibility for administration and operation of the ERS and for effectuating the provisions of the ERS Act.

(b) OCGA § 47-2-110 (a) was enacted as part of § 5 of the 1949 Act.[21] As originally enacted, it provided that upon written application to the Board, any member in service who had reached 60 years of age

---

[15] (Citations omitted.) Id. at 613 (1).

[16] See also *Employees' Retirement System of Ga. v. Martin*, 272 Ga. 535 (533 SE2d 68) (2000) (holding in favor of state employees on their claim that retirement statute violated their equal protection rights and finding their breach of contract claim moot).

[17] Ga. Const. 1983, Art. I, Sec. II, Par. IX (c).

[18] Ga. L. 1949, p. 138, § 1 et seq.

[19] Ga. L. 1949 at p. 142.

[20] Ga. L. 1949 at p. 150.

[21] Ga. L. 1949, pp. 138, 146.

or who had 35 years of creditable service could retire on a "service retirement allowance."[22] OCGA § 47-2-110 (a) now provides that upon written application to the Board, any member in service who has thirty years of creditable service, or who has reached sixty years of age with at least five or ten years of creditable service (depending upon whether he became a member before or after July 1, 1968), may retire on a "service retirement allowance."

OCGA § 47-2-110 (a) thus establishes the minimum age a state employee must reach, or the minimum number of years of service he must accrue, before being eligible to retire on what is referred to as a "service retirement allowance." The Code section does not, however, establish or guarantee the amount of the retirement allowance or provide a method for its calculation.[23]

(c) The term "service retirement allowance" is, however, defined in OCGA § 47-2-120 (a), which was part of § 5 of the 1949 Act,[24] as (1) "[a]n annuity which shall be the actuarial equivalent of [the member's] accumulated contributions at the time of his retirement" and (2) "a pension equal to the annuity allowable at age of retirement, but not to exceed an annuity which would have been allowed at age 65, which pension shall be computed on the basis of his contributions made prior to attaining age 65. . . ."[25]

Although the effect of this Code section is not entirely clear, it is clear that neither it nor OCGA § 47-2-110 (a) (the primary Code sections relied on by plaintiffs) supports plaintiffs' claim to an entitlement to retire upon reaching the age of 60 without their age being taken into consideration in calculating the amount of their retirement benefits. And because neither of these Code sections provides a formula for the calculation of service retirement benefits, the authority to do so rests with the Board under the general grant of authority in OCGA § 47-2-21 to effectuate the provisions of the ERS Act.

---

[22] Id.

[23] Compare, e.g., OCGA § 47-7-100 (b) (1) (any eligible firefighter or volunteer firefighter who has attained the age of 55 and terminates service after at least 25 years of service shall have a vested right in an amount equal to the maximum monthly retirement benefit then in effect); OCGA §§ 47-4-100 (a); 47-4-101 (b) (1) (upon retirement on the normal retirement date of age 65 a member of the public school employees retirement system shall receive a monthly retirement benefit in the amount of $15 multiplied by the number of the member's years of creditable service).

[24] See Ga. L. 1949 at p. 147.

[25] In 1982, the General Assembly enacted OCGA § 47-2-334 redefining the term "service retirement allowance" for state employees who become members of the ERS on or after July 1, 1982 (referred to as new plan members). OCGA § 47-2-334 is not, however, applicable here because all of the plaintiffs became ERS members before 1982. Application of OCGA § 47-2-334 would not be beneficial to the plaintiffs in any event, because it reduces retirement benefits to employees who began work for the state after the effective date. See *Martin*, supra, 272 Ga. 535.

Moreover, more specific grants of authority are found in OCGA §§ 47-2-26 (a) and 47-2-28 (a) and (b).

(d) OCGA § 47-2-26 (a), part of § 6 of the 1949 Act,[26] requires the Board to designate an actuary as its technical adviser on matters regarding the operation of ERS funds. Based on investigations that must be conducted by the actuary at least every five years, the Board must from time to time adopt "mortality, service, and other tables as it shall deem necessary for use in all calculations required in connection with" the retirement system.

(e) Effective January 1, 1959, the General Assembly enacted OCGA § 47-2-28 (a),[27] authorizing the Board, after conducting an actuarial investigation into the retirement system's benefit structure, to adopt "such tables, calculations, and compensation and deduction schedules as it shall deem desirable in connection with the proper operation of the retirement system." All tables, calculations, and compensation and deduction schedules adopted under the authority of OCGA § 47-2-28 (a) must generally be based on "final monthly earnings, which shall mean monthly earnable compensation as reflected by monthly contributions during employment," except that such tables and calculations may neither diminish nor impair the amount of any allowances or benefits which would have been payable to the member by use of tables or calculations in effect on January 1, 1959.

Effective April 1, 1964, the General Assembly enacted OCGA § 47-2-28 (b),[28] authorizing the Board to adopt "simplified benefit tables" to "enable a member to estimate his or her retirement allowances." Among other things, OCGA § 47-2-28 (b) requires such tables to be based on an actuarial study and must be applied to all members, except that application of the tables cannot reduce or impair the amount of any allowances or benefits to which any person who was a member on April 1, 1964, would have been entitled at that time or would be entitled at any time thereafter under tables or calculations then or previously in effect. And for those members retiring on and after April 1, 1964 (later changed to April 1, 1968), the tables must be applied to the member's highest average monthly earnable compensation during a period of 24 consecutive calendar months while a member of the retirement system.

Under the authority of OCGA § 47-2-28 (b), the Board in 1964 adopted a "Plan for Simplified Benefit Tables" which created a

---

[26] Ga. L. 1949 at p. 153.
[27] Ga. L. 1959, p. 107, § 6.
[28] Ga. L. 1964, p. 119, § 1.

formula for the calculation of retirement benefits using factors that incorporate average monthly compensation, years of creditable service, and the age of the member applying for retirement.[29] Under the benefit tables adopted in 1964, the Board applies an age reduction factor at the rate of five percent per year and five-twelfths of one percent per month for each year and month an employee retires before reaching the age of sixty-five.

(f) In 1978, the General Assembly enacted OCGA § 47-2-120 (c).[30] It provides that any member with 30 years of service, "regardless of age," shall be eligible to retire and be paid "not less than the service retirement allowance which would have been payable to such member upon service retirement at age 65 with 30 years of service." OCGA § 47-2-120 (d), as amended in 1977,[31] entitles any member with at least 34 years of service to retire and be paid "not less than the service retirement allowance which would have been payable upon service retirement at the age of 65 had he continued in service without further change in compensation."

These Code provisions do preclude application of an age reduction factor in calculating the service retirement allowance of a member who retires with at least 30 years of service. Because, however, all of the plaintiffs retired with less than 30 years service, neither provision applies here.

In 1998, the General Assembly enacted OCGA § 47-2-120 (e), permitting members with at least 25 years of creditable service to retire prior to reaching the age of 60.[32] Subsection (e) thus applies to state employees who, like the plaintiffs, retire with less than 30 years of creditable service, but who, unlike the plaintiffs, retire before the age of 60. Subsection (e) requires the retirement service allowance of such employees to be reduced by "an actuarial equivalent certified by the board of trustees." The reduced amount must take into consideration both "the member's age" and the "number of years of creditable service at the time of retirement." By the express terms of subsection (e), the above reduction does not apply in calculating the service

---

[29] Plaintiffs claim that the 1964 benefit tables were not based on an actuarial study, as required by OCGA § 47-2-28 (b). The tables are, however, included in the record. Documentation attached to them reflects that the 1964 tables were prepared by actuaries employed by the Board and adopted with certain suggested changes. Evidence submitted by the plaintiffs indicates that there was no actuarial investigation into the impact of applying an age reduction factor to retirees in plaintiffs' age and service categories.

[30] Ga. L. 1978, p. 1652, § 1.

[31] Ga. L. 1977, p. 1096, § 1.

[32] Op. Atty. Gen. 99-10 (1990) found OCGA § 47-2-120 (e) applicable to a state employee who resigned prior to the effective date of the statute but whose retirement did not become effective until after the statute's effective date. That conclusion was reached based on a consideration of provisions of the ERS Act outside the scope of our decision.

allowance for disability retirement or death.

After the enactment of OCGA § 47-2-120 (e), the Board adopted a new "Plan for Simplified Benefits Table." The new table does not apply an age reduction factor to persons who retire after July 1, 1998, because the Board applies a separate age reduction factor to such employees pursuant to OCGA § 47-2-120 (e).

(g) In sum, the ERS Act grants the Board the general authority to effectuate the provisions of the Act. The ERS Act grants state employees who have reached the age of 60 the right to retire on a service retirement allowance, but the Act only provides that such an allowance shall be comprised of an annuity and pension computed on the basis of the employee's contributions. The Board is given specific authority to adopt tables to calculate retirement allowances. Those tables must be calculated based on the employee's earnings. The Act, as amended in 1978, entitles any member with 30 years of service to retire and be paid the amount that would have been payable to the member upon service retirement at age 65 with 30 years of service, but plaintiffs retired with less than 30 years service. In 1998, the General Assembly amended the Act to allow members with 25 years of creditable service to retire before reaching the age of 60, but requiring the Board to reduce the amount of their retirement allowances based on their age. Taking into consideration the foregoing provisions of the Act in their totality,[33] and viewing them through the lens of their evolution,[34] we must conclude that prior to 1998 the Board possessed the discretionary authority to reduce retirement allowances based on age for employees retiring before the age of 65 with less than 30 years of creditable service.[35]

(h) Contrary to arguments advanced by the plaintiffs, the General Assembly has provided sufficient guidelines so that its delegation of this authority to the ERS does not constitute an unconstitutional abdication of legislative power.[36] The plaintiffs' claimed equal-protection violation is belied by evidence submitted by the ERS showing that an age reduction factor is applied to employees retiring both before and after July 1, 1998. Therefore, the trial court did not

---

[33] *Williams v. Bear's Den*, 214 Ga. 240, 242 (104 SE2d 230) (1958) (statute to be construed as a whole).

[34] *Tippins Bank & Trust Co. v. Southern Gen. Ins. Co.*, 266 Ga. 97, 98 (464 SE2d 381) (1995) (in construing statutes, subsequent legislative enactments on same subject may be considered); *Crossroads Bank of Ga. v. Corim, Inc.*, 262 Ga. 364, 365 (1) (418 SE2d 601) (1992) (history of legislation an important tool in ascertaining legislative intent).

[35] Compare *Alford v. Public Svc. Comm.*, 262 Ga. 386, 388 (1) (b) (418 SE2d 13) (1992) (where there are two possible constructions, retirement statute must be liberally construed in favor of employee).

[36] See generally *Dept. of Transp. v. City of Atlanta*, 260 Ga. 699, 703 (1) (398 SE2d 567) (1990).

err in awarding summary judgment to the ERS. The trial court's verbatim adoption of an order prepared by counsel for the ERS, though disfavored, does not constitute reversible error.[37]

3. Remaining issues are moot.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED MARCH 4, 2005 —
RECONSIDERATION DENIED MARCH 23, 2005 —

*Moraitakis, Kushel, Pearson, & Gardner, Albert M. Pearson III, Robert M. Margeson III*, for appellants.

*Thurbert E. Baker, Attorney General, Annette M. Cowart, Assistant Attorney General, Gray, Hedrick & Edenfield, Susan L. Rutherford*, for appellee.

---

[37] *Richardson v. Barber*, 241 Ga. App. 254, 255 (1) (527 SE2d 8) (1999).