**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**June 11, 2015**

# In the Court of Appeals of Georgia

A15A0712. FULTON COUNTY, GEORGIA v. ANDREWS et al.

McMillian, Judge.

Appellees are current or former attorneys employed with the Office of the Public Defender, Atlanta Judicial Circuit (the "Public Defenders") who filed suit against Fulton County, Georgia (the "County"), alleging breach of contract and violation of county laws. In their petition, the Public Defenders assert that, pursuant to the Civil Service Act of 1982 (the "Civil Service Act"), they are entitled to the same compensation given to attorneys assigned to the Office of the County Attorney (the "County Attorneys"). They allege, however, that the County increased the salary of the County Attorneys, creating an unlawful pay disparity between the two groups of attorneys. Following discovery, both parties filed motions for summary judgment. The trial court denied the County's motion and granted the Public Defenders' motion.

The County appeals, asserting that the trial court erred in concluding that (1) Fulton County personnel regulations constitute the parties' employment contract, as opposed to the "offer letters" received by the Public Defenders and (2) the County violated the personnel regulations by paying the Public Defenders less than other attorneys. Finding no error, we affirm.

"In reviewing a trial court's ruling on a motion for summary judgment, we conduct a de novo review to determine whether the undisputed facts warrant judgment as a matter of law. OCGA § 9-11-56." (Citation omitted.) *Wright v. IC Enterprises*, 330 Ga. App. 303, 303 (765 SE2d 484) (2014). And, "[t]he opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion." (Citation and punctuation omitted.) Id.

So viewed, the record shows that pursuant to a 1939 amendment to the Georgia Constitution, the General Assembly enacted a civil service merit system for Fulton County. Ga. L. 1943, p. 971. In 1982, the General Assembly passed a law revising the Fulton County civil service system, the express purpose of which was to establish "a high quality merit system of personnel administration based upon accepted merit

2

principles and recognized methods governing the appointment, promotion, transfer, layoff, removal, discipline, and well-being of employees who are governed by this Act, and for related personnel actions associated with Fulton County employment." Ga. L. 1982, pp. 4896-4897, § 1. Consequently, pursuant to the Civil Service Act, the County implemented a comprehensive set of "Personnel Regulations" that are vested with the "force and effect of law"[1] to create a civil service merit system wherein the County's Personnel Director must develop a "Position Classification Plan" for all positions "based upon similarity of duties performed and responsibilities assumed so that comparable qualifications may reasonably be required for and the same schedule of pay may be equitably applied to all positions in the same class." PR 200-1. Relevant to the Public Defenders' claims, PR 300-9 provides that the County's Personnel Board and Board of Commissioners "shall establish minimum and maximum salary rates for all employees of Fulton County whose classes and positions are established on salary ranges (Classified and Unclassified)." In addition, PR 300-1 mandates that "[n]o employee shall be paid at a salary rate lower than the minimum or higher than the maximum of the salary range approved and established for the class in which currently serving, unless dictated by a [c]ounty-wide classification and

---

[1] Ga. L. 1982, p. 4896, § 3; PR 100-1 (1).

3

compensation study which has been approved by the Personnel Board and Board of Commissioners."

In 1995, the County hired Fox Lawson, a private consulting firm, to perform a county-wide study to ensure the development of an appropriate, neutral classification and compensation system. Fox Lawson completed its study in 1997 and proposed a comprehensive pay plan that assigned each County employee to one of approximately 600 job classifications (the "Fox Lawson study"). It also proposed the equitable range of pay for each job classification, using the "Decision Band Method" ranking system ("DBM").[2] The Board of Commissioners adopted Fox Lawson's proposed classification and compensation structure in June 1997. Under this structure, the County classified the Public Defenders within the same job classification and DBM pay grade as the County Attorneys. Thus, for example, entry level attorneys in both groups were classified as "606022 Attorney, Staff" and assigned a pay grade of "C42."[3]

_____

[2] The DBM determination is based on several criteria, including the difficulty of work performed by members of the classification, the complexity of the work performed, and the supervisory responsibilities and decision making authority of the classification members.

[3] More senior attorneys in both groups were progressively classified as "606024 Attorney, Senior" with a "C43" pay grade, "606026 Attorney, Supervising"

4

As part of the compensation structure adopted by the County, "[m]arket premiums" or salary differentials ("premium pay") could be applied to the salary rate for a particular classification when the average market compensation level, including the private sector, exceeded the County's established salary rate by 15% or more.[4] Beginning in 1997, the County applied premium pay raises to the County Attorneys[5] that were substantially more than those given to other attorneys within the same classification, including the Public Defenders.[6] Thus, a pay differential between the County Attorneys and the Public Defenders was established and carried forward year after year.

In April 2005, pursuant to a request by the Board of Commissioners, the County's Personnel Director reviewed the County's use of premium pay and

with a "C51" pay grade, and "606027 Attorney, Managing" with a "D63" pay grade.

[4] In pertinent part, PR 300-9 provides: "Market premiums or differentials may be applied to the salary rates for certain classifications when the market compensation level exceeds the established salary rate by a minimum of fifteen percent (15%)."

[5] These premium pay raises ranged from a 36% supplement for staff attorneys to a 70% supplement for supervising attorneys.

[6] The public defenders were awarded premium pay ranging from 0% for staff attorneys to 29% for managing attorneys. The County's judicial assistants, also within the same classification, were awarded no premium pay.

recommended a "divestiture plan" designed to eliminate premium pay within the County's classification and compensation system. As part of its divestiture plan, the County placed certain employees, including the County Attorneys and most positions within the Public Defender's Office, on a new salary range called "Schedule B."[7] However, the salary ranges within Schedule B included the previous premium pay granted to each group of attorneys, thereby perpetuating the pay differential between the County Attorneys and the Public Defenders.[8] In January 2012, the Public Defenders filed a grievance through the County's civil service grievance procedure, alleging this pay disparity and seeking back pay and a prospective pay adjustment. In response, the County informed the Public Defenders that they would not be permitted to pursue their claims through the grievance process, and the Public Defenders subsequently filed their action in the Superior Court of Fulton County. In granting the Public Defenders' motion for summary judgment, the trial court found that the County's Personnel Regulations formed an employment contract between the

[7] Because the staff attorneys with the Public Defender's Office had not been receiving any premium pay, they were not included on Schedule B.

[8] This was done despite the Personnel Director's determination that the market disparity for the position of staff attorney with the County Attorneys had fallen to 2%, well below the 15% threshold for premium pay designation.

6

County and the Public Defenders and that nothing in PR 300-9, which provides for premium pay to a classification under certain market conditions, permits the County to ignore the requirements of PR 300-1 that prohibit the County from paying its employees outside the established salary ranges without a new, county-wide classification study.

1. The County asserts that, in granting summary judgment to the Public Defenders, the trial court erred by concluding that the County's Personnel Regulations "constitute the entire employment agreement" between the County and the Public Defenders. The County maintains that the Personnel Regulations are not specific enough to constitute an employment contract and that only the "offer letters" sent to each Public Defender set forth the terms of employment that should be enforced.

However, nowhere in its order does the trial court conclude that the Personnel Regulations make up the "entire" contract or employment agreement between the parties. Rather, the trial court correctly rejected the County's argument that the terms of the letters supersede the Personnel Regulations, which the County maintains are "but one aspect of the parties' employment agreement." Under the Civil Service Act, the Personnel Regulations, including the requirement that "the same schedule of pay

7

. . . be equitably applied to all positions in the same class,"[9] have the full force and effect of law. Ga. L. 1982, p. 4896, § 3; PR 100-1 (1). It is well established that a statute establishing a retirement plan for government employees becomes a part of an employee's contract of employment. *DeKalb County School District v. Gold*, 318 Ga. App. 633, 642 (2) (734 SE2d 466) (2012) (the statute becomes part of the employment contract and is compensation for services rendered, and an amendment to the statute to reduce or eliminate employee benefits would violate our state constitution's impairment clause); *Alverson v. Employees' Retirement System of Georgia*, 272 Ga. App. 389, 391-392 (1) (b) (613 SE2d 119) (2005) (state employees were parties to a written contract established by statute in effect when they performed services and contributed toward their retirement benefits). And we see no reason why a statute establishing a merit-based compensation structure and regulations promulgated thereunder should be treated any differently than a statute establishing a retirement plan. See *Clark v. State Personnel Board*, 252 Ga. 548, 550 (2) (a) (314 SE2d 658) (1984) (holding that the state Merit System Act "create[s] a constitutionally protected contract between the merit system members and the state"); *Fulton County v. Lord*, 323 Ga. App. 384, 389 (1) (746 SE2d 188) (2013) (finding

---

[9] PR 200-1.

8

the judicial assistants' claim for back pay pursuant to Fulton County's personnel regulations sounds in contract).

Moreover, pretermitting whether the "offer letters" included terms in contradiction with the Personnel Regulations,[10] the County was without authority to override the Personnel Regulations by creating its own terms in an "offer letter" to certain of its employees. See *DeClue v. City of Clayton*, 246 Ga. App. 487, 491 (2) (540 SE2d 675) (2000) ("A constitutional act of the legislature has been found to be the equivalent of a contract and the rights created thereby may not be impaired by subsequent legislation."). PR 100-1 (2), entitled "General Purpose," provides that the

> Personnel Regulations shall be the sole and exclusive instrument governing personnel administration, personnel transactions, and procedures within Fulton County, unless otherwise mandated by law. Departmental standard *operating procedures in conflict* with these

---

[10] The trial court found that these letters were simply "confirmations that employment has been accepted." And the record shows that virtually each letter opens with "Welcome to the Office of the Public Defender. Pursuant to your acceptance of Mr. Pitts' offer of employment . . . I am writing to confirm your start date . . . and to advise you of the following." The letter then informs the employee of his or her starting salary and the salary range for the position. For example, staff attorneys were notified that their salary range was "C42," thereby specifically referring to the classification and compensation system established pursuant to the same Personnel Regulations that expressly prohibit compensating members of a classification below or above their salary range.

Personnel Regulations *are not allowed*; to the extent such a conflict exists, these regulations shall apply. (Emphasis supplied.)

And, as we have noted, PR 300-1 expressly mandates that "[n]o employee shall be paid at a salary rate lower than the minimum or higher than the maximum of the salary range approved and established for the class in which currently serving . . ." Accordingly, the County had no authority to unilaterally create a pay disparity between the County Attorneys and the Public Defenders except as outlined in the Personnel Regulations, and "a contract which is void because it is made without authority cannot be ratified." *Clark v. Head*, 272 Ga. 104, 106 (3) (526 SE2d 859) (2000).

We likewise reject the County's contention that the Public Defenders cannot establish a breach of contract claim because they are relying on the County Attorneys' contracts to which they were neither parties nor intended beneficiaries. To the contrary, the Personnel Regulations clearly establish a minimum and maximum salary rate for "*all* employees" and provide that "[*no*] employee shall be paid" outside his or her designated salary range. (Emphasis supplied.) And PR 200-1, in mandating the creation of "an appropriate Position Classification Plan for *all on-range positions* . . . based upon similarity of duties performed and responsibilities assumed," is

10

designed to ensure "that comparable qualifications may reasonably be required for and the same schedule of pay may be equitably applied to *all positions in the same class*." (Emphasis supplied.)

Thus, by awarding a higher percentage of premium pay to the County Attorneys, who are members of the same classification as the Public Defenders, and by perpetuating that pay disparity through the creation of Schedule B, the County has breached its contractual obligations to the Public Defenders under the Personnel Regulations. To find otherwise would completely undermine the purpose of a merit-based civil service system. See *Wayne County v. Herrin*, 210 Ga. App. 747, 752-753 (3) (437 SE2d 793) (1993) ("civil service systems rest on the principles of a merit system rather than (not in addition to) a spoils system").

2. The County also asserts that the trial court erred in concluding that the County violated the Personnel Regulations. The County first claims that OCGA § 36-1-21 vests the County with authority to compensate the Public Defenders and the County Attorneys as it sees fit under "home rule."[11] However, OCGA § 36-1-21 is

---

[11] OCGA § 36-1-21 (a) provides that "[t]he governing authority of any county is authorized to provide by ordinance or resolution for the creation of a civil service system for employees of the county, other than elected officials or persons appointed to positions for specified terms." And OCGA § 36-1-21 (c) provides that "[a] civil service system created pursuant to the authority of this Code section shall be

11

inapplicable where a civil service system is created by the General Assembly, as was the County's. See *Ferdinand v. Bd. of Commissioners of Fulton County*, 281 Ga. 643, 645, n. 4 (641 SE2d 787) (2007).

Likewise misplaced is the County's argument that requiring it to pay the Public Defenders in the same range as the County Attorneys would violate the Gratuities Clause of the Georgia Constitution, which prevents the General Assembly from granting "extra compensation to any public officer . . . after the service has been rendered." Ga. Const. Art. III, Sec. VI, Para. VI (a). The County's position is based on a false premise because the Public Defenders are not seeking "extra compensation." They are seeking the compensation they were legally entitled to under the Personnel Regulations in force at the time they performed their services. See *City of Brookhaven v. City of Chamblee*, 329 Ga. App. 346, 353 (4) (765 SE2d 33) (2014) (remand unnecessary for consideration of constitutional issue because argument was based on a false premise).

And finally, the County's assertion that its decision to compensate the Public Defenders "differently" from the County Attorneys is not unusual or unreasonable,

---

administered in such manner and pursuant to such rules and regulations as may be provided for by resolution or ordinance of the county governing authority which created the system."

12

as purportedly evidenced by the different salaries paid to judges in Georgia, has no merit. Unlike the varying salaries for different judicial offices, which are expressly determined by statute,[12] the Public Defenders and County Attorneys are within the same employment classification under the County's civil service system as implemented by the Personnel Regulations. And pursuant to its own regulations, both groups of attorneys are to be compensated within the same salary range.

Therefore, in order to pay the County Attorneys outside the maximum salary range established for their classification, the County is only authorized to do so under PR 300-1 if it is "dictated by a [c]ounty-wide classification and compensation study which has been approved by the Personnel Board and Board of Commissioners." The County claims to have conducted a "salary survey" in 2005 to assess the County's use of premium pay and which led to the creation of Schedule B, but there is no evidence in the record that the County ever conducted a full county-wide classification and compensation study following the 1997 Fox Lawson study.

Instead, in 2005 as part of its premium pay divestiture plan, the County merely surveyed 56 jurisdictions and private entities, and only with respect to the 35 job

---

[12] See, e.g., OCGA §§ 45-7-4; 47-8-62; 15-10-23.

13

classifications that were then receiving premium pay.[13] This survey resulted in new titles assigned to the positions included in Schedule B and the separation of the County Attorneys and the Public Defenders. For example, the previous position of "Attorney, Managing" split and became "B-Attorney, Managing (County Attorney)" and "B-Attorney, Managing (Public Defender)."[14] However, Paris Brown, the County's assistant Personnel Director at the time, admitted that this change was not a reclassification, but instead simply a "title change." He also confirmed that the title change did not mean that the complexity or difficulty of the work performed had changed. And, as the trial court noted, the Personnel Regulations requirement that salary ranges be based on a county-wide classification and compensation study "demands an internal comparison of duties and responsibilities among County employees across department lines and a comparable salary allocation for comparable skills and responsibilities." Thus, if the County desired to apply a market differential

---

[13] Again, staff attorneys with the Public Defender's office were not included because they were not receiving any premium pay.

[14] The two groups of attorneys originally retained identical title codes, with the managing attorneys both still coded as "606027." The title codes for the two groups of attorneys later changed in 2007, but Robert Brandes, the County's Personnel Director at the time, again characterized this change as simply a change in title code, not a reclassification.

to its employees' salaries, as permitted by PR 300-9, the differential must be applied to the classification as a whole, not to certain departments within the classification.

The County may be correct that "sufficient difference exists among the functions, focus and budgets of its various [legal] departments to warrant different pay scales for attorneys in those departments." And the County is certainly permitted to amend its classification and compensation plan. However, in doing so, it must follow the requirements of the Personnel Regulations. It did not do so here, and the trial court did not err in granting summary judgment to the Public Defenders. See, e.g., *Gold*, 318 Ga. App. at 642 (2); *Duggan v. Leslie*, 281 Ga. App. 894, 896 (637 SE2d 428) (2006) (finding county board of commissioners chose an invalid method when it attempted to pass a resolution changing its personnel manual).

*Judgment affirmed. Barnes, P. J., and Ray, J., concur*.