**SECOND DIVISION
ANDREWS, P. J.,
MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**November 20, 2015**

# In the Court of Appeals of Georgia

A15A1033.  GEORGIA  DEPARTMENT  OF  COMMUNITY
HEALTH v. NEAL.

BRANCH, Judge.

Plaintiff Trecia Neal filed this action seeking class certification on behalf of
Gold and Silver members of the State Health Benefits Plan ("SHBP") for 2014.
Neal's complaint alleges that the Georgia Department of Community Health ("the
Department") breached its contract with these members when it retroactively
eliminated the three tiers of coinsurance for healthcare services and instead combined
them into a single schedule of co-payments, adding co-payments for pharmacy
benefits and certain medical visits, and also refused to reduce premiums. The
Department moved to dismiss on the ground of sovereign immunity, but the trial court
denied the motion on the ground that the Plan documents, read with relevant statutes

and regulations, created a written contract that established a waiver of sovereign immunity. The Department appealed this ruling under the collateral order doctrine,[1] and now argues that no such written contract amounting to a waiver has been proven. We agree and reverse.

"We review de novo a trial court's ruling on a motion to dismiss based on sovereign immunity grounds, which is a matter of law. Factual findings are sustained if there is evidence supporting them, and the burden of proof is on the party seeking the waiver of immunity." *Bd. of Regents v. Canas*, 295 Ga. App. 505, 509 (3) 672 SE2d 471 (2009) (citation and punctuation omitted).

Although we would view the record in favor of the trial court's judgment, the relevant facts are not in dispute. The State Health Benefits Plan ("SHBP" or "the Plan") is comprised of three health insurance plans for state employees, public school teachers, and public school employees respectively.[2] Neal is an employee of the DeKalb County school system. During the open enrollment period in late 2013, the Department offered Neal and other SHBP members three health insurance coverage

---

[1] The parties do not dispute that the appeal is properly taken, given that the trial court conclusively determined that sovereign immunity did not apply. See *Bd. of Regents v. Canas*, 295 Ga. App. 505, 507 (1) (672 SE2d 471) (2009).

[2] See OCGA §§ 45-18-2, 20-2-881, 20-2-911.

options for the upcoming calendar year 2014: Gold, Silver, and Bronze. In exchange for higher premiums, Gold and Silver members would receive more money for their Health Reimbursement Accounts, lower deductibles, lower co-insurance rates, and lower out-of-pocket maximums than Bronze members. Neal registered online, verified her address and dependents, selected Gold coverage, clicked on a "CONFIRM" button, and received a confirmation code. In doing so, Neal expressly accepted SHBP's "terms and conditions," including her "responsibility to review any applicable Plan documents . . . including [those] posted electronically" on the Department's SHBP website "at the time of [her] decision."

These "Plan documents," which were posted on the SHBP web site, included a 23-page so-called Active Decision Guide, prefaced by a welcome letter from the Commissioner of the Department, and a 134-page Summary Plan Description, including a schedule of benefits, descriptions of numerous specific benefits and services, payment and appeal procedures, and notices. According to the Active Decision Guide, the Summary Plan Description governed the terms of coverage. On the page where it announces the dates of open enrollment for the 2014 Plan, the Active Decision Guide states: "The material in this booklet is *for information purposes only and is not a contract*. It is intended only to highlight the principal

3

benefits of the SHBP plan options." (Emphasis supplied.) The same page of the Active Decision Guide also states that "[a]vailability of SHBP options may change based on federal or state law changes or as approved by the Board of the Department of Community Health (DCH)" and that "[p]remiums for SHBP options are established by the DCH Board and may be changed at any time by the Board resolutions subject to advance notice."

Nothing in the Summary Plan Description identifies the Plan as a contract. Indeed, the Summary Plan Description often emphasizes that the administrators of the Plan, including a "Medical Claims Administrator," retained the power to "waive, enhance, change or end certain medical managament processes" if "in the [administrator's] discretion such change further[s] the provision" of medical services.[3] The September 2013 Board resolution establishing 2014 premium rates includes a notice as follows:

> The Board of Community Health sets all member premiums by resolution and in accordance with the law and applicable revenue and

---

[3] The Summary Plan Description likewise notes that "[t]he Medical Claims Administrator reserves the right to modify the policies, procedures and timeframes" concerning a member's right to appeal a benefits decision "upon further clarification" from the federal "Department of Health and Human Services and Department of Labor."

4

expense projections. Any subsidy policy adopted by the Board may be changed at any time by Board resolution, and does not constitute a contract or promise of any amount of subsidy.

On January 27, 2014, facing financial shortfalls in the Plan, the Department eliminated the three tiers of coinsurance (Gold, Silver, and Bronze) for most health care services and established a single tier of co-payments made retroactive to January 1. Gold and Silver members were required to continue paying higher monthly premiums even as their copayments were increased to Bronze levels.

On May 14, 2014, Neal filed this action seeking class certification on behalf of Gold and Silver Plan members and asserting breach of contract and breach of implied covenant claims against the Department. Exhibits attached to the original complaint included the September 2013 Board resolution adopting premium rates for 2014 and the January 2014 resolution and website page announcing the changes to the Plan put at issue by Neal. In June 2014, after the Department moved to dismiss on the ground that Neal had not proved a waiver of sovereign immunity by written contract, Neal amended her complaint, asserting the same claims but now also attaching the Active Decision Guide and the Summary Plan Description. The Department again moved to dismiss on sovereign immunity grounds. After a hearing,

5

the trial court denied the Department's motion on the ground that "the Plan [d]ocuments, including all contemporaneous writings thereto, constitute a written contract" such that the Department waived its sovereign immunity as to Neal's claims. This appeal followed.

The Department argues that the trial court erred in denying the Department's motion to dismiss because Neal had not established that the SHPB documents created a contract between her and the Department sufficient to waive the State's sovereign immunity. The Department also argues that the trial court erred when it concluded that the relevant statutes and regulations created a contract between Neal and the Department for purposes of sovereign immunity. We agree with both of these contentions.

1. *The Express Contract Exception to Sovereign Immunity*. The trial court held that when Neal enrolled in the SHPB Plan and paid premiums for enhanced health care coverage, she entered into a written contract with the Department, memorialized in the Commissioner's welcome letter at the beginning of the Active Decision Guide, such that the Department's sovereign immunity was waived. This conclusion was erroneous.

Except as specifically provided in the Georgia Constitution of 1983,

6

> sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.

Ga. Const. Art. I, Sec. II, Par. IX (e). "Where the sovereign has sovereign immunity from a cause of action, and has not waived that immunity, the immunity rises to a constitutional right and cannot be abrogated by any court." *Tyson v. Bd. of Regents of the Univ. System of Ga.*, 212 Ga. App. 550-551 (442 SE2d 9) (1994), citing *State Bd. of Education v. Drury*, 263 Ga. 429, 430 (1) (437 SE2d 290) (1993).

One of the limited circumstances in which the State has waived its sovereign immunity is in "any action ex contractu for the breach of any written contract now existing or hereafter entered into by the state or its departments or agencies." Ga. Const. of 1983, Art. I, Sec. II, Para. IX (c). "It is axiomatic that the party seeking to benefit from the waiver of sovereign immunity bears the burden of proving such waiver." *Ga. Dept. of Community Health v. Data Inquiry*, 313 Ga. App. 683, 685 (1) (722 SE2d 403) (2012) (citation and punctuation omitted). "[I]n order to overcome the Department's assertion of sovereign immunity," Neal has "the burden of showing that the contract sought to be enforced is *in writing* and contains all of the terms

7

necessary to constitute a valid contract." Id. (emphasis supplied). As we have previously explained in the context of sovereign immunity, "[a] valid written contract may be formed when there are multiple, *signed*, contemporaneous agreements between the parties which demonstrate their intent to enter into a binding contract and the individual documents, considered together, include all the necessary terms of a contract." *Bd. of Regents v. Ruff*, 315 Ga. App. 452, 456 (2) (726 SE2d 451) (2012) (punctuation and footnote omitted; emphasis in original). Because a person may sue the state only "on an express contract," recovery under an "implied contract" theory is barred. *Dept. of Transportation v. Fru-Con Const. Corp.*, 206 Ga. App. 821, 825 (3) (426 SE2d 905) (1992).

Read as a whole, the documents at issue here do not show that the parties entered into a signed, written contract. The welcome letter to the Active Decision Guide, which is the only document bearing the signature of the Commissioner of the DCH, opens by welcoming Plan members to open enrollment; refers to "fiscal and regulatory challenges" that may require "innovative solutions to address these challenges"; describes some features of the 2014 Plan; and ends by thanking members "for participating in your SHBP[.]" The welcome letter itself contains no contract terms, however. As for the unsigned Active Decision Guide, by its terms it expressly

8

notes that it is "not a contract," but is "intended only to highlight the principal benefits of the SHBP plan options." The Active Decision Guide also provides clear notice that premiums "may be changed at any time by . . . Board resolution[] subject to advance notice." The Plan documents also fail to create an express contract because they do not set out the terms of such contract. As the Active Decision Guide states, "[a]vailability of SHBP options may change based on federal or state law changes or as approved by the Board of the Department of Community Health (DCH)," and SHPB premiums were "established by the DCH Board and [could] be changed at any time by the Board resolutions subject to advance notice."

Because Neal failed to produce a writing signed by the SHBP or its representative showing that the State intended to enter into a contract with SHBP members, and because a contract established by conduct is insufficient to prove a waiver of sovereign immunity, the trial court erred when it concluded that plaintiff had proven a waiver of sovereign immunity under the express contract clause of the Georgia Constitution. *Tyson*, 261 Ga. at 369-370 (1) (reversing judgment for plaintiff hospital patient on his contract claim and directing that judgment be entered in favor of the Board of Regents when a consent form signed by that patient, taken with "other parts of her medical record," did not amount to "signed writings" sufficient to

9

establish a waiver of sovereign immunity); *Ruff*, 315 Ga. App. at 457 (2) (where plaintiff could not produce a copy of an application for study abroad that was "signed by a representative of the Board of Regents or a representative of the University of Georgia," there was "no evidence which demonstrated the intent of the Board of Regents to enter into a binding contract" with plaintiff).

2. *Relevant Statutes and Regulations.* In addition to concluding that Neal had proven an express contract sufficient to waive sovereign immunity, the trial court also held that when read in the context of the statutes and regulations governing the plan, Neal's enrollment, and her payment of premiums for "enhanced" coverage under it, created a contract with the Department. Specifically, and citing Ga. Comp. R. & Regs. 111-4-1-.02, which provides in relevant part that with written notice, "the Commissioner may terminate Coverage for *any Group that either contracts for SHBP Coverage or is designated by applicable state law as eligible for such Coverage* for failure to remit either Employee or Employer Contributions," id. at (2) (b) (5) (iii), the trial court concluded that "these rules indicate that SHPB coverage exists for those who contract for [them] or are eligible for [them] pursuant to state law." This conclusion was also erroneous.

10

As a public school employee, Neal fell under the second of the categories identified in Ga. Comp. R. & Regs. 111-4-1-.02 (2) (b) (5) (iii) – that is, as a person "designated by applicable state law as eligible" for SHPB coverage, and not as a member of a "Group" that "contracts" for coverage, with the result that this regulation does not apply.[4] The term "contract" in this regulatory provision is also meaningless in the context of this lawsuit because the mere use of that term, either by parties or in a regulation, does not meet our Supreme Court's requirement that a waiver of sovereign immunity must be based on the plain language of a *statute*: when such "plain language . . . does not provide for a specific waiver of governmental immunity nor the extent of such a waiver, . . . no waiver can be implied or shown." *Ga. Dept. of Natural Resources v. Center for a Sustainable Coast*, 294 Ga. 593, 603 (2) (755 SE2d 184) (2014) (citation omitted). In *Kennedy v. Dept. of Human Resources*, 286 Ga. App. 222 (648 SE2d 727) (2007), for example, we held that despite the use of the term "contract" throughout a so-called "statement of understanding," the terms of that document were "too uncertain to form a binding legal contract," such that a plaintiff

---

[4] As noted by the State in its initial brief, and not refuted by Neal, examples of groups that contract for SHPB coverage include counties (OCGA § 45-18-5), governmental authorities (OCGA § 45-18-7.1 et seq.), and critical access hospitals (OCGA § 45-18-7.7), but not individual Plan members.

11

had failed to show a waiver of sovereign immunity under the ex contractu exception. Id. at 224 (1).

The trial court and Neal also rely on the fact that the "Definitions" section of the regulations concerning SHPB, which were posted on the SHBP website, includes two provisions describing coverage as a "contract," as follows:

> "Coverage" means the type, Tier, and Option of *contract* offered to an Enrolled Member pursuant to the Health Insurance Acts. . . .
> "Enrolled Member" means *the contract holder*[,] who may be the Employee, Retiree, Contract Employee, or Extended Beneficiary who is currently enrolled in Coverage and who has paid the necessary Deduction or Premium for such Coverage.

Ga. Comp. R & Regs. 111-4-1-.01 (18) and (25) (emphasis supplied). Another SHBP regulation posted on the website stated, however, that "[i]n creating the SHBP, neither the Georgia General Assembly nor the Board of Community Health has waived its sovereign immunity" such that "no action . . . can be brought or maintained against the State of Georgia, the Board of Community Health, or any other department or political subdivision of the State of Georgia to recover any money under this Plan." Ga. Comp. R. & Regs. 111-4-1-.10 (3). The same regulation also stated that the Board of Community Health "reserves the right to modify its Benefits,

Coverages, and eligibility requirements at any time, subject only to reasonable advance notice to its Members." Id. at (3) (b).

Isolated appearances of the term "contract" in a regulation, see Ga. Comp. R. & Regs. 111-4-1-.01 (18) and (25), cannot overcome the same regulations' explicit announcement that ("in creating the SHBP, neither the Georgia General Assembly nor the Board of Community Health has waived its sovereign immunity," with the result that "no action[,] either in law or in equity, can be brought or maintained against the State of Georgia, the Board of Community Health, or any other department or political subdivision of the State of Georgia to recover any money under this Plan." Ga. Comp. R. & Regs. 111-4-1-.10 (3). See *Upper Chattahoochee Riverkeeper, Inc. v. Forsyth County*, 318 Ga. App. 499, 502 (1) (734 SE2d 242) (2012) ("even when" a regulation's words "are apparently plain in meaning, they must not be read in isolation and instead, must be read in the context of the regulation as a whole"). Further, and in the absence of any other statute specifically providing for a waiver of sovereign immunity in this context, no language in a regulation promulgated by the executive branch can establish that the *General Assembly* intended to waive the state's sovereign immunity when it authorized the Department to establish a health benefits plan for 2014. See *Ga. Dept. of Natural Resources*, 294 Ga. at 603 (2) (when

13

a statute's "plain language . . . does not provide for a specific waiver of governmental immunity nor the extent of such a waiver, . . . no waiver can be implied or shown").

The trial court appears to have concluded that Neal's enrollment in the SHPB, and thus her submission to these regulations, amounts to an implied contract sufficient to waive sovereign immunity. As we have previously noted, however, an implied contract does not provide sufficient evidence of the Legislature's intention to waive the State's sovereign immunity. *Fru-Con Const. Corp.*, 206 Ga. App. at 825 (3).

Both the trial court and Neal have also cited *Alverson v. Employees' Retirement System of Ga.*, 272 Ga. App. 389 (613 SE2d 119) (2005), as support for their assertions that Neal's enrollment in the SHBP established a written contract sufficient to waive sovereign immunity. In *Alverson*, we noted that sovereign immunity did not apply because plaintiffs were parties to a written contract: a statute establishing a retirement plan for state employees "'becomes a part of an employee's contract of employment if the employee contributes at any time any amount toward the benefits he is to receive, and if the employee performs services while the law is in effect.'" Id. at 391 (1) (b), quoting *Parrish v. Employees' Retirement System of Ga.*, 260 Ga. 613 (1) (398 SE2d 353) (1990); see also *Pulliam v. Ga. Fireman's Pension Fund*, 262 Ga.

14

411, 413 (1) (419 SE2d 918) (1992) (pension rights are property because they become part of the contract of employment).

We have not seen any cases extending the *Alverson* rationale beyond issues of payment for services rendered (pursuant to undisputed contracts) and retirement benefits (which are vested property rights) to the specialized context of the voluntary participation in the Plan at issue here. And we have not located any authority declaring health insurance as a property right. See, e. g., *Unified Gov't. of Athens-Clarke County v. McCrary*, 280 Ga. 901, 903-904 (635 SE2d 150) (2006) (reversing trial court's misconstruction of "level of coverage" as giving plaintiff county employees the right to post-retirement PPO health coverage; employees "never had a vested right to maintain in retirement the precise health-care delivery system by which they received their coverage while employed"). We also find that cases cited by Neal involving employees covered by the Civil Service Act are inapposite because Neal does not allege that she was subject to that Act. See, e.g., *Fulton County v. Lord*, 323 Ga. App. 384, 389 (1) (746 SE2d 188) (2013) (group of county judicial assistants' claim for back pay pursuant to Fulton County's personnel regulations was in the nature of a contract claim); *Fulton County v. Andrews*, 332 Ga. App. 473, 477 (1) (773 SE2d 432) (2015) (for Civil Service Act employees, a statute establishing a

15

merit-based compensation structure is no different than a statute establishing a retirement plan).

For all these reasons, Neal has failed to show that Neal and the Department entered into a signed, written contract such that the ex contractu exception to the State's sovereign immunity would apply. The trial court thus erred when it denied the Department's motion to dismiss Neal's complaint on the ground of the Department's sovereign immunity from suit as an agency of the State.

*Judgment reversed. Andrews, P. J., and Miller, J., concur.*