S13A0987. ATLANTA INDEPENDENT SCHOOL SYSTEM et al. v. ATLANTA NEIGHBORHOOD CHARTER SCHOOL, INC. et al.

(748 SE2d 884)

THOMPSON, Chief Justice.

This appeal involves interpretation of the Charter Schools Act of 1998 (the "Act"), OCGA § 20-2-2060 et seq., regarding the authority of the Atlanta Independent School System ("APS") and the Atlanta Board of Education to deduct a $38.6 million unfunded pension liability expense before calculating the amount of local revenue funds to be distributed to start-up charter schools within APS.[1] Appellees (the "start-up charter schools") are all non-profit corporations which have been granted charters by APS to operate start-up charter schools.[2] In May 2012, APS for the first time announced it was subtracting $38.6 million from local revenue before calculating the

---

[1] OCGA § 20-2-2062 (14) defines a "start-up charter school" as "a charter school that did not exist as a local school prior to becoming a charter school."

[2] Appellees are Atlanta Neighborhood Charter School, Inc., Atlanta Preparatory Academy, Inc., Drew Charter School, Inc., The Intown Academy, Inc., KIPP Metro Atlanta Collaborative, Inc., The Kindezi School, Inc., Latin Academy Charter School, Inc., and Wesley International Academy, Inc.

amount of local revenue to be distributed to its schools. The stated purpose for the change in funding was APS's need to pay down a large, unfunded pension liability for current and former APS employees that has been accruing since at least the 1980s.[3]

In response to the announced change, the start-up charter schools filed a petition for writ of mandamus seeking to compel appellants[4] to distribute local revenue to the start-up charter schools without any deduction for APS's unfunded pension liability. The trial court granted the requested mandamus relief, finding the statutory funding formula set out in the Act does not authorize appellants to subtract the $38.6 million from its calculation of local revenue. For the reasons that follow, we affirm.

The Charter Schools Act was enacted by the General Assembly with the intent to "increase student achievement through academic and organizational innovation by encouraging local school systems to utilize the flexibility of a performance based contract called a charter." OCGA § 20-2-2061. The Act authorizes a charter petitioner seeking to create a charter school to submit a petition to the local board of the local school system in which the charter school will be located. OCGA § 20-2-2064 (a) and (b). The petition shall be approved by the local board if it complies with the rules, regulations, policies and procedures promulgated by the State Board of Education and the provisions of the Act and is in the public interest. OCGA § 20-2-2064 (d). A locally approved petition then must be reviewed and approved by the State Board of Education. OCGA § 20-2-2064.1. Once approved by both the local and state boards, the charter school is authorized to operate under the terms of the charter between the school and the local board of education. OCGA §§ 20-2-2065 (a); 20-2-2067.1.

The funding mechanism for local charter schools[5] is set forth in OCGA § 20-2-2068.1 and establishes a formula pursuant to which all local charter schools are included in the allotment of funds distributed pursuant to the Quality Basic Education Act. OCGA § 20-2-2068.1 (a). See OCGA § 20-2-130 et seq. In addition, a local charter school is entitled to receive a proportional share of its school

---

[3] APS asserts the total amount of the unfunded pension liability at issue totaled approximately $550 million as of the beginning of fiscal year 2012-2013.

[4] The named appellants are APS, the Atlanta Board of Education and its board members in their official capacities, and Erroll Davis, in his capacity as superintendent of APS.

[5] As defined in the Act, "local charter schools" include both start-up charter schools and "conversion charter schools," which are schools that existed as a local school prior to becoming a charter school, operate under the direct supervision of the local school board, and receive funding like other traditional public schools in the local school system. OCGA § 20-2-2062 (4) and (7).

system's local revenue. OCGA § 20-2-2068.1 (c). "Local revenue," is generally defined in the Act as:

> local taxes budgeted for school purposes in excess of the local five mill share, combined with any applicable equalization grant and budgeted revenues from any of the following: investment earnings, unrestricted donations, and the sale of surplus property; but exclusive of revenue from bonds issued for capital projects, revenue to pay debt service on such bonds and local option sales tax for capital projects.

OCGA § 20-2-2062 (8). However, with regard to start-up charter schools, the Act deviates from this general definition and provides a separate method for calculating the amount of local revenue to be distributed by the local board. OCGA § 20-2-2068.1 (c). Construing OCGA § 20-2-2068.1 (c), the trial court determined the Act prohibited appellants from subtracting funding for APS's unfunded pension liability from their calculation of local revenue to be distributed to the start-up charter schools. Appellants argue on appeal that the trial court's interpretation contradicts legislative intent and prevents the local board and APS from exercising its lawful discretion with regard to the control and management of its schools.

At issue in this case is the proper interpretation of the second component of the funding mechanism applicable to start-up charter schools which directs that local revenue shall be calculated by use of the formula set out in OCGA § 20-2-2068.1 (c). We begin our analysis of the statute by recognizing that fundamental rules of statutory construction require us to construe a statute according to its terms, to give words their plain and ordinary meaning, and to look diligently for the intention of the General Assembly. OCGA § 1-3-1 (a); *Slakman v. Continental Cas. Co.*, 277 Ga. 189, 190 (587 SE2d 24) (2003). Where the plain language of a statute is clear and susceptible of only one reasonable construction, we must construe the statute according to its terms. *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981). Applying these rules, we agree with the trial court that pursuant to the plain language of OCGA § 20-2-2068.1 (c), appellants are without authority or discretion to deduct the unfunded pension expense from their calculation of local revenue to be distributed to start-up charter schools.

OCGA § 20-2-2068.1 (c) provides, in pertinent part:

> . . . In the case of a start-up charter school, local revenue earnings shall be calculated as follows:

(1) Determine the total amount of state and local five mill share funds earned by students enrolled in the local start-up charter school as calculated by the Quality Basic Education Formula pursuant to Part 4 of Article 6 of this chapter including any funds for psychologists and school social workers but excluding 5 percent of system-wide funds for central administration and excluding any categorical grants not applicable to the charter school;

(2) Determine the total amount of state and local five mill share funds earned by all students in the public schools of the local school system, including any charter schools that receive local revenue, as calculated by the Quality Basic Education Formula but excluding categorical grants and other non-QBE formula grants;

(3) Divide the amount obtained in paragraph (1) of this subsection by the amount obtained in paragraph (2) of this subsection; and

(4) Multiply the quotient obtained in paragraph (3) of this subsection by the school system's local revenue.

The product obtained in paragraph (4) of this subsection shall be the amount of local funds to be distributed to the local start-up charter school by the local board[.]

Thus, the Act expressly directs that as it pertains to start-up charter schools, local revenue shall be calculated according to the formula set forth in OCGA § 20-2-2068.1 (c) and the product of this calculation "shall be the amount of local funds to be distributed to the local start-up charter school by the local school board." Id.

Appellants' primary argument is that because the Act is silent as to how system-wide expenses, such as APS's unfunded pension liability, may be assessed against charter schools, they were authorized to deduct the expense from local revenue prior to determining the amount of local revenue funds to be distributed to the start-up charter schools. Essentially, appellants would have us superimpose onto the statute an implicit authorization for local school boards to reduce the amount of available local revenue by first deducting expenses. This we cannot do. OCGA § 20-2-2068.1 (c) provides a precise formula for calculating local revenue as applied to start-up charter schools, including which funds and grants shall be included and excluded, as well as the exclusion of five percent of system-wide

funds for central administration, and gives a clear and mandatory direction that the product of that calculation shall be the amount of local revenue distributed. See also OCGA § 20-2-2068.1 (c) (2). To adopt appellants' interpretation would require us to ignore the funding formula set out in OCGA § 20-2-2068.1 (c) and distort the statute's mandatory directive in violation of the rules of statutory construction. For this same reason, we reject appellants' argument that the Act requires local school boards to fund all local charter schools and traditional public schools "on the same basis." Appellants base this contention on language in OCGA § 20-2-2068.1 (c) immediately preceding the start-up charter school funding formula which provides that "local revenue shall be allocated to a local charter school on the same basis as for any local school in the local school system." Although this language may indicate a general intent to treat schools within a school system similarly with respect to the provision of certain funds, the interpretation urged by appellants is in direct contravention of the succeeding language which expressly establishes a separate and distinct local revenue funding formula for start-up charter schools. Despite appellants' protestations, we are without authority to re-write the statute to demand an equal allocation of local revenue funds when it is clear from a reading of the statute as a whole that the intention of the General Assembly was to fund local schools *unequally* with regard to local revenue. See *Allen v. Wright*, 282 Ga. 9 (3) (644 SE2d 814) (2007). Had the General Assembly intended to apply the same formula for calculating local revenue to all schools within a local school system or to exempt unfunded pension liabilities from the calculation of local revenue, it could have expressly done so in the Act. See *City of Atlanta v. City of College Park*, 292 Ga. 741, 743 (741 SE2d 147) (2013); *Morton v. Bell*, 264 Ga. 832, 833 (452 SE2d 103) (1995).

Nor can we agree with appellants' argument that the trial court's interpretation of OCGA § 20-2-2068.1 (c) interferes with their discretion to manage public education within the local school system. While local boards of education have authority to manage and control the school system within their territory, see Ga. Const. 1983, Art. VIII, Sec. V, Par. II, they must do so in compliance with applicable constitutional and statutory laws. Ga. Const. 1983, Art. VIII, Sec. I, Par. I. See *Thornton v. Clarke County School District*, 270 Ga. 633, 635 (514 SE2d 11) (1999) (courts will not interfere with local school board's discretion to control operation of school system absent violation of law or abuse of discretion). See generally *Crawford v. Irwin*, 211 Ga. 241 (3) (85 SE2d 8) (1954). This is especially true where, as here, the local school board has consented to the creation of the start-up charter schools, and therefore, application of all provisions of

the Charter Schools Act. See OCGA § 20-2-2062 (1) (by entering into charter, charter petitioner and local school board agree to be bound by all provisions of the Act as though it were set forth in the charter).

Our decision in this appeal is limited to the proper interpretation and application of OCGA § 20-2-2068.1 (c) as enacted regarding the allocation of local revenue to start-up charter schools. Because appellants' subtraction of funds from the calculation of local revenue to cover a portion of APS's unfunded pension liability circumvents the plain language of OCGA § 20-2-2068.1 (c) and deprives the start-up charter schools of funding to which they are legally entitled, we affirm the trial court's order granting mandamus relief. The proper remedy for appellants' opposition to the language of the local revenue funding formula as written lies within the General Assembly.

*Judgment affirmed. All the Justices concur.*

NAHMIAS, Justice, concurring.

I concur fully in the Court's opinion and in particular in the Court's holding that, "[w]hile local boards of education have authority to manage and control the school system within their territory, . . . they must do so in compliance with applicable constitutional and statutory laws." Compare *Gwinnett County School District v. Cox,* 289 Ga. 265, 265 (710 SE2d 773) (2011) (asserting that "our constitution embodies the fundamental principle of *exclusive* local control of general primary and secondary ('K-12') public education" (emphasis added)). See also id. at 278-289, 303-305 (Nahmias, J., dissenting) (refuting that assertion).

I am authorized to state that Justice Blackwell joins in this concurrence.

DECIDED SEPTEMBER 23, 2013.

*Carlock, Copeland & Stair, Thomas A. Cox, Christopher J. Hoffman,* for appellants.

*Sutherland, Asbill & Brennan, Rocco E. Testani, Lee A. Peifer,* for appellees.

*Strickland, Brockington & Lewis, John J. Park, Jr., Mariem L. Hubbard, Joshua P. Thompson, Lana Harfoush,* amici curiae.