**THIRD DIVISION**
**ELLINGTON, P. J.,**
**GOBEIL and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 2, 2018**

# In the Court of Appeals of Georgia

A18A1098. COBB COUNTY SCHOOL DISTRICT et al. v. LEARNING CENTER FOUNDATION OF CENTRAL COBB, INC.

GOBEIL, Judge.

The Cobb County School District and eight named individuals[1] (collectively, the "District") appeal from an order of the Superior Court of Fulton County which denied their motion to dismiss a complaint filed by the Learning Center Foundation of Central Cobb, Inc. d/b/a International Academy of Smyrna (the "Academy").[2] The District contends, inter alia, that the superior court erred in refusing to dismiss the

---

[1] The following individuals were sued in their individual capacities: Superintendent of the Cobb County School District, Chris Ragsdale; and Cobb County Board of Education members, Randy Scamihorn, Susan Thayer, David Morgan, David Chastain, David Banks, Scott Sweeny, and Brad Wheeler.

[2] We granted the District's application for interlocutory appeal.

Academy's complaint on sovereign immunity grounds. We disagree and affirm the order of the superior court.

Until the late Spring of 2017, the Academy was a charter school authorized by the District and the Georgia Department of Education. In addition to the specific terms contained in the written charter agreement between the District and the Academy, the parties' relationship was governed by the Charter Schools Act, OCGA § 20-2-2060, et seq. (the "Act"). In its complaint, the Academy alleged that, starting in 2014, the District made certain reporting errors that resulted in the Academy being underfunded. The Academy asserted that it was thus "treated less favorably than its traditional school counterparts" within the school district. As a result of the reporting errors, the Academy contended it lost "$2,086,560 in funds."

The Academy sued the District for breach of contract, alleging that the District violated its obligations under the Act to treat the Academy no less favorably than other local schools, for instance, with respect to certain funding provisions. See, e.g., OCGA § 20-2-2068.1 (a) ("[t]he local board and the state board shall treat a start-up charter school no less favorable than other local schools . . . with respect to the provision of funds . . ."). The Academy also asserted that the District violated State Board of Education Rule 160-4-9-.06(1)(a)(ii)(XIII)(II), which requires the District

2

to "[p]rovide funds to local charter schools on the same basis as it provides funds to its other local schools." Further, the Academy claimed that the District violated OCGA §§ 20-2-167 (a) and 20-2-182 (g), statutes concerning how school funding is computed. The District filed a motion to dismiss, arguing that the Academy's claim was barred by sovereign immunity. Following a hearing, the trial court denied the motion, finding that the Academy was entitled to maintain a suit against the District because the Academy had asserted a prima facie claim for breach of contract. The court further found that, by entering into the charter agreement, and pursuant to the Act, the District agreed to be bound by the provisions of the Act as if those provisions were specifically set forth in the charter agreement.

On appeal, the District disputes that the Act's provisions are incorporated into the terms of the charter, characterizing the Act merely as an expression that the parties to the charter will be governed by the Act.[3] Asserting the Act's terms are

---

[3]The District also argues on appeal that the trial court abused its discretion (1) "since [OCGA §§ 20-2-167 (a) and 20-2-182 (g)] and [State Board of Education Rule 160-4-9-.06(1)(a)(ii)(XIII)(II)] which [the Academy] alleges that [the District] breached could not have been incorporated into the [c]harter because they are not part of the Act," and (2) by failing to dismiss the individually-named members of the Cobb County Board of Education and the superintendent of the District. However, the trial court did not rule on these issues, and we cannot address them in the first instance on appeal. See *Findley v. City of Atlanta*, 345 Ga. App. 649, 652 (2) (814 SE2d 781) (2018) ("It is, of course, well established that this Court is for the

3

incorporated by statute into its charter agreement, the Academy contends it therefore may pursue a breach of contract claim for the alleged violations.

"Because sovereign immunity is not an affirmative defense, but rather a privilege that is subject to waiver by the State, the party seeking to benefit from that waiver has the burden of establishing the waiver of sovereign immunity." *Williams v. Dept. of Corrections*, 338 Ga. App. 719, 720 (1) (791 SE2d 606) (2017). We review de novo a trial court's denial of a motion to dismiss based on sovereign immunity grounds, which is a matter of law." *Dept. of Transp. v. King*, 341 Ga. App. 102 (798 SE2d 492) (2017) (Citation and punctuation omitted).

It is undisputed that the District has sovereign immunity for tort claims.[4] The sovereign immunity of the State, and its political subdivisions such as the District,

---

correction of errors of law, and when the trial court has not ruled on an issue, we will not address it.") (citation and punctuation omitted).

[4]Under Art. I, Sec. II, Par. IX of the Georgia Constitution of 1983, sovereign immunity extends to a county-wide school district. See *Coffee County School Dist. v. Snipes*, 216 Ga. App. 293, 294 (454 SE2d 149) (1995). This immunity would extend to the named individuals whom the Academy sued in their official capacities. *Stone v. Taylor*, 233 Ga. App. 886, 887-888 (1) (506 SE2d 161) (1998) ("Sovereign immunity is the immunity provided to governmental entities and to public employees sued in their official capacities."). Although the District argues that the Academy must pursue any perceived violations of the Act in tort, the District acknowledges that sovereign immunity would bar an action in tort.

4

may be waived by an act of the General Assembly. See *Gilbert v. Richardson*, 264 Ga. 744, 748 (3) (452 SE2d 476) (1994); Ga. Const. of 1983, Art. I, Sec. II, Par. IX (a). However, the Georgia Constitution further provides that "[t]he state's defense of sovereign immunity *is hereby waived* as to any action ex contractu for the breach of any written contract now existing or hereafter entered into by the state or its departments and agencies." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c) (emphasis supplied). Therefore, the Georgia Constitution expressly waives such actions arising in contract, without any action being required by the General Assembly.

Our analysis of the proper interpretation of the Act is guided by the following principles:

> A statute draws its meaning, of course, from its text. Under our well-established rules of statutory construction, we presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its "plain and ordinary meaning," we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. Though we may review the text of the provision in question and its context within the larger

5

legal framework to discern the intent of the legislature in enacting it, where the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning ends.

*Patton v. Vanterpool*, 302 Ga. 253, 254 (806 SE2d 493) (2017) (Citations and punctuation omitted).

OCGA § 20-2-2062 (1) defines a "charter" in part as "a performance based contract." The Act further states: "By entering into a charter, a charter petitioner and local board *shall be deemed to have agreed to be bound to all the provisions of [the Act] as if such terms were set forth in the charter*." OCGA § 20-2-2062 (1) (emphasis supplied). The plain language of the Act does more than recite that the parties to a charter are bound by the Act. It essentially creates the basic terms of a charter agreement by stating that the parties to a charter "agree to be bound" "as if" the provisions of the Act were replicated word-for-word in the charter agreement. The provisions of the Act are part of the core of any charter agreement and part of the consideration exchanged between the parties. By its express terms, OCGA § 20-2-2062 (1) incorporates the provisions of the Act into the charter agreement entered into by the Academy and the District. And, because the Georgia Constitution waives

6

sovereign immunity for actions ex contractu, the Academy's action is not subject to dismissal based on sovereign immunity.

Accordingly, the trial court's order denying the District's motion to dismiss is affirmed, and the Academy may proceed on its claim for breach of contract.

*Judgment affirmed. Goss, J., concurs fully and specially. Ellington, P. J., dissents.\**

**\*    THIS OPINION IS PHYSICAL PRECEDENT ONLY.   COURT OF APPEALS RULE 33.2(a).**

A18A1098. COBB COUNTY SCHOOL DISTRICT et al. v.
         LEARNING CENTER FOUNDATION OF CENTRAL
         COBB, INC.

GOSS, Judge, concurring fully and specially.

I concur fully. I write separately to note that the charter contract itself is replete with references to the Charter Schools Act of 1998, OCGA § 20-2-2060, et seq., and many of its specific provisions. Further, the charter contract is signed by the chairperson of the Georgia State Board of Education, the authorized representative of the Academy, and the chairperson of the Cobb County Schools Board of Education. As OCGA § 20-2-2062 (1), which defines the charter in part as a "performance based contract," provides, "a charter petitioner and local board *shall be deemed to have agreed to be bound* by all the provisions of [the Act] as if the terms were set forth in the charter." (Emphasis supplied.)

A18A1098. COBB COUNTY SCHOOL DISTRICT et al. v.
LEARNING CENTER FOUNDATION OF CENTRAL
COBB, INC.

ELLINGTON, Presiding Judge, dissenting.

Because I believe that the District is immune from suit for the claims brought

by the Academy, I respectfully dissent.

The violation of a civil statute is generally considered a tort which may give

rise to a cause of action ex delicto,[1] and the District has sovereign immunity for tort

---

[1] An action ex delicto is one involving a violation of law.

In order to maintain an action ex delicto because of a breach of duty growing out of a contractual relation the breach must be shown to have been a breach of a duty imposed by law and not merely the breach of a duty imposed by the contract itself. "Duty imposed by law" as used in this context means either a duty imposed by a valid statutory enactment of the legislature or a duty imposed by a recognized common law principle declared in the reported decisions of the appellate courts of the State.

(Citations and punctuation omitted.) *Hewitt v. Walker*, 226 Ga. App. 764 (487 S.E.2d 603) (1997). Additionally, the violation of a statute is per se a tort if "the injured person falls within the class of persons it was intended to protect and . . . the harm

claims.[2] The majority agrees with the Academy's contention, however, that the District's alleged violation of a provision of the Charter Schools Act was cognizable as a breach of contract, or an action ex contractu,[3] because the provisions of the Act were incorporated into its charter by operation of law and, therefore, were made terms of the charter. In support of this contention, the majority relies on a provision of the Charter Schools Act which defines a "charter," as follows:

> "Charter" means a performance based contract between a local board and a charter petitioner, the terms of which are approved by the local board and by the state board in the case of a local charter school,

complained of was the harm it was intended to guard against." (citations omitted.) *Central Anesthesia Assoc. v. Worthy*, 173 Ga. App. 150, 153 (325 SE2d 819) (1984).

[2]Under Art. I, Sec. II, Par. IX of the Georgia Constitution of 1983, sovereign immunity extends to a county-wide school district. See *Coffee County School Dist. v. Snipes*, 216 Ga. App. 293, 294 (454 SE2d 149) (1995). Further, the named individuals whom the Academy sued in their official capacities share in the District's immunity from suit. See *Stone v. Taylor*, 233 Ga. App. 886, 887-888 (1) (506 SE2d 161) (1998) ("Sovereign immunity is the immunity provided to governmental entities and to public employees sued in their official capacities.").

[3] Art. I, Sec. II, Par. IX (c) of the Georgia Constitution provides that "[t]he state's defense of sovereign immunity is hereby waived as to any action ex contractu for the breach of any written contract now existing or hereafter entered into by the state or its departments and agencies." In *Board of Regents v. Tyson*, 261 Ga. 368 (404 SE2d 557) (1991), the Georgia Supreme Court held that even if a contract with a state agency is formed by the parties' conduct, if it is not a written contract the state's sovereign immunity is not waived. *Georgia Department of Labor v. RTT Associates, Inc.*, 299 Ga. 78, 82-83 (2) (786 SE2d 840) (2016).

2

between the state board and a charter petitioner, the terms of which are approved by the state board in the case of a state chartered special school, or between a local board and the state board, the terms of which are approved by the state board in the case of a charter system. *By entering into a charter, a charter petitioner and local board shall be deemed to have agreed to be bound to all the provisions of this article as if such terms were set forth in the charter.*

OCGA § 20-2-2062 (1) (emphasis added). The majority reads the last sentence of this Code section as one incorporating "all the provisions of this article" into every Charter, thereby making the entire regulatory scheme of the article a part of a charter contract which may be breached and upon which a claim for damages may be brought. Consequently, the majority holds that, because the Academy's suit is an action ex contractu for which sovereign immunity has been waived, the District is not immune from suit. I believe the majority has misinterpreted this Code section.

The statutory language upon which the majority has relied is not a waiver of sovereign immunity, express or implied.[4] Rather, it is a declaration that those who

_____

[4] "The constitutional doctrine of sovereign immunity bars any suit against the [s]tate to which it has not given its consent, including suits against state departments, agencies, and officers in their official capacities[.]" *Lathrop v. Deal*, 301 Ga. 408, 444 (IV) (801 SE2d 867) (2017). Article I, Section II, Paragraph IX (e) of the Georgia Constitution of 1983 provides that "[t]he sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent

3

enter into a charter have agreed that their charter is a contract governed by the Charter

Schools Act, regardless whether terms expressing that mutual agreement and

understanding have been expressed in the written charter. In drafting OCGA § 20-2-

2062 (1), the legislature used the word "terms" to refer to the contractual language

of the charter. And it used the words "article" and "provisions" to describe the

governing law of the Charter Schools Act. Thus, the words "such terms" in the phrase

"as if such terms were set forth in the charter" refers to the agreement deemed to exist

between the parties to the charter that the charter will be governed by the Act. "Such

terms" does not refer to the "article" or the "provisions" of the Act. Therefore, this

---

of such waiver." See *Gilbert v. Richardson*, 264 Ga. 744, 748 (3) (452 SE2d 476) (1994) (sovereign immunity is waived by a "legislative act which specifically provides that sovereign immunity is waived and the extent of such waiver") (emphasis supplied). "In this regard, implied waivers of governmental immunity should not be favored." (Citations and punctuation omitted.) *Currid v. DeKalb State Court Probation Dept.*, 285 Ga. 184, 186 (674 SE2d 894) (2009). "The doctrine of sovereign immunity shields the state from suits seeking to recover damages. . . . [T]he primary purpose of sovereign immunity is to protect state coffers." (Citations and footnotes omitted.) *In the Interest of A. V. B.*, 267 Ga. 728 (1) (482 SE2d 275) (1997) (sovereign immunity allows complaint seeking injunctive relief and no damages). The application of sovereign immunity to this case would not mean that the Academy lacks a remedy to challenge violations of the Charter Schools Act. For example, it may bring a mandamus action. See, e.g., *Atlanta Independent School System v. Atlanta Neighborhood Charter School, Inc.*, 293 Ga. 629, 631 (748 SE2d 884) (2013) (mandamus).

4

Code section does not incorporate the Charter Schools Act into the charter as terms of the contract, as the superior court concluded and as the majority now holds.

Further, when read in the context of the Charter Schools Act, the meaning of this last sentence of OCGA § 20-2-2062 (1) should be clear. For example, as provided elsewhere in the Act, charter schools and charter systems are granted a general waiver exempting them from most state statutory and regulatory schemes that apply to noncharter public schools under Title 20, "Education."[5] Thus, implicit in every charter is an agreement that the parties have chosen to be bound by the law governing

---

[5] OCGA § 20-2-2065 (a) provides, in relevant part:

Except as provided in this article or in a charter, a charter school, or for charter systems, each school within the system, shall not be subject to the provisions of this title or any state or local rule, regulation, policy, or procedure relating to schools within an applicable school system regardless of whether such rule, regulation, policy, or procedure is established by the local board, the state board, or the Department of Education; provided, however, that the state board may establish rules, regulations, policies, or procedures consistent with this article relating to charter schools. A waiver granted pursuant to this Code section for a charter system shall apply to each system charter school within the system.

5

charter schools, which includes these waivers, unless the charter expressly provides otherwise. See *Day v. Floyd County Bd. of Ed.*, 333 Ga. App. 144, 147 (1) (775 SE2d 622) (2015) (Because the [Fair Dismissal Act] is among the provisions of Title 20 generally waived, a charter system is not subject to the [Fair Dismissal Act] unless the system's charter so provides or unless an exception to the general waiver contained within Title 20 applies.").

For these reasons, the majority's conclusion that the provisions of the Charter Schools Act are also terms of the charter contract misconstrues the plain language of this Code section. I believe that the Academy has failed to carry its burden of demonstrating the existence of a written contract the terms of which the District allegedly breached; therefore, I believe that it has not shown the requisite waiver of sovereign immunity. See *Drumm v. George*, 345 Ga. App. 760, (814 SE2d 575) (2018) ("[B]ecause the [plaintiffs] failed to meet their burden to prove the existence of a written contract, this action is barred by sovereign immunity.") (citations omitted).