**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCMILLIAN and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 28, 2019**

# In the Court of Appeals of Georgia

A19A0227. BOYD et al. v. NEAL
A19A0369. NEAL v. GEORGIA DEPT. OF COMMUNITY
HEALTH et al.

MᴄMɪʟʟɪᴀɴ, Judge.

Trecia Neal,[1] a DeKalb County school system employee who enrolled in the State Health Benefits Plan for the calendar year 2014, initially filed this putative class action against the Georgia Department of Community Health (the "Department") for breach of contract and breach of the covenant of good faith and fair dealing after the Department changed the benefits that she had elected and for which she had agreed to pay premiums. Neal subsequently amended the complaint to assert a petition for

---

[1] Two other individuals also asserted claims, but they are not parties to this appeal.

writ of mandamus against the Board of Community Health (the "Board") members[2] to require them to perform what Neal alleges was their official duty to conduct an actuarial analysis and recalculate premiums before changing the plan benefits. These related appeals arise from the trial court's order granting summary judgment to the Department on sovereign immunity grounds (Case No. A19A0369) and denying the Board's motion to dismiss Neal's alternative claim for a writ of mandamus (Case No. A19A0227).[3] For the reasons that follow, we affirm the trial court's order granting summary judgment in favor of the Department but reverse its denial of the Board's motion to dismiss.

*Case No. A19A0369*

By statute, the Board is authorized to establish a health insurance plan for state employees, public school teachers, and public school employees; this plan is called the State Health Benefits Plan ("SHBP" or the "Plan"). See OCGA §§ 45-18-2; 20-2-

---

[2] The individual Board members named as defendants are Norman Boyd, Russ Childers, Russell Crutchfield, Allana Cummings, Roger Folsom, Donna Thomas Moses, Mark Trail, and Anthony Williamson. We will refer to them collectively as the Board or Board members.

[3] Following our grant of the Board members' application for interlocutory review, Neal filed her notice of cross-appeal. Because the two cases arise from the same set of facts and the same trial court order, we have consolidated them for purposes of this appeal.

881; 20-2-911, respectively. During the open enrollment period in 2013, the Department offered Plan members three coverage options for the 2014 calendar year: Gold, Silver, and Bronze. In exchange for higher premiums, Gold and Silver members would receive more money for their Health Reimbursement Accounts, lower deductibles, lower co-insurance rates, and lower out-of-pocket maximums than Bronze members.

Neal registered online for Gold coverage. By doing so, Neal accepted the Plan's "terms and conditions," including her "responsibility to review any applicable Plan documents." The Plan documents included an "Active Decision Guide," a welcome letter from the Commissioner of the Department, and a "Summary Plan Description," which governed the terms of coverage. The Active Decision Guide stated: "The material in this booklet is for information purposes only and is not a contract. It is intended only to highlight the principal benefits of the SHBP plan options." The same page also clarified that "[a]vailability of SHBP options may change based on federal or state law changes or as approved by the Board . . ." and that "[p]remiums for SHBP options are established by the DCH Board and may be changed at any time by the Board resolutions subject to advance notice." Also, the

3

2013 Board resolution establishing the premium rates for 2014 included a notice that:

> The Board of Community Health sets all member premiums by resolution and in accordance with the law and applicable revenue and expense projections. Any subsidy policy adopted by the Board may be changed at any time by Board resolution, and does not constitute a contract or promise of any amount of subsidy.

When the Department faced financial shortfalls in the Plan, it eliminated the three tiers of co-insurance for most health care services and established a single tier of co-payments, a change made on January 27, 2014 and retroactive to January 1, 2014. Following this change, Gold and Silver Plan members were required to continue paying higher premiums despite the fact that they no longer had the benefit of better co-insurance rates as compared to the Bronze Plan.

In May 2014, Neal filed suit against the Department, seeking class certification on behalf of Gold and Silver Plan members for breach of contract and breach of the implied covenant of good faith and fair dealing. The Department moved to dismiss, arguing that Neal was unable to prove a waiver of its sovereign immunity by written contract. Neal then amended her complaint to attach the Active Decision Guide and

4

Summary Plan Description. The Department again filed a motion to dismiss on sovereign immunity grounds, which the trial court denied.

On appeal, this Court reversed the trial court's order, holding that even "[r]ead as a whole, the documents at issue here do not show that the parties entered into a signed, written contract." *Ga. Dept. of Community Health v. Neal*, 334 Ga. App. 851, 855 (1) (780 SE2d 475) (2015) ("*Neal I*"). We further found that the relevant statutes and regulations governing the Plan did not create a contract between Neal and the Department and Neal was, therefore, unable to prove a waiver of sovereign immunity. Id. at 856 (2). Following its grant of Neal's petition for writ of certiorari, our Supreme Court vacated this Court's opinion and remanded the case for us to reconsider our conclusion that we had jurisdiction over the Department's direct appeal in light of the Supreme Court's intervening holding in *Rivera v. Washington*, 298 Ga. 770 (784 SE2d 775) (2016). After concluding on remand that we lacked jurisdiction to hear the Department's direct appeal under the collateral order doctrine, we dismissed the appeal. *Ga. Dept. of Community Health v. Neal*, 340 Ga. App. 94 (796 SE2d 482) (2017).

Once the case was remitted back to the trial court, the Department filed a motion to set aside the prior order and enter a new order granting its motion to

5

dismiss. Neal opposed the motion and filed an amended complaint, adding an alternative claim for mandamus against the individual members of the Board. The Department then filed a motion for partial summary judgment related to the breach of contract claims, and the Board filed a motion to dismiss the petition for mandamus. Following a hearing, the trial court granted the Department's motion on sovereign immunity grounds, but denied the Board's motion to dismiss. This appeal followed.

1. In her first two enumerations of error, Neal asserts that the trial court erred in finding that neither the Plan documents nor the implementing statutes constitute a written contract with the State sufficient to waive sovereign immunity.

We start our analysis by examining the doctrine of sovereign immunity as it relates to contract actions. Generally, the Georgia Constitution provides broad sovereign immunity for the State:

> Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.

6

Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). But sovereign immunity is waived in limited circumstances, and specifically, for contract actions, sovereign immunity is waived: "as to any action ex contractu for the breach of any written contract now existing or hereafter entered into by the state or its departments and agencies." Ga. Const. Art. I, § II, ¶ IX (c). See also OCGA § 50-21-1 (a) ("The defense of sovereign immunity is waived as to any action ex contractu for the breach of any written contract . . . entered into by the state, department and agencies of the state, and state authorities.").

Our Supreme Court has recently explained the relationship between common law rules of contract and what constitutes a written contract sufficient to waive sovereign immunity:

> General rules of contract law that might otherwise support a claim for breach of contract damages between private parties . . . will not support a claim against the state or one of its agencies if the contract is not in writing so as to trigger the waiver of sovereign immunity.

*Ga. Dept. of Labor v. RTT Assoc., Inc.*, 299 Ga. 78, 82 (2) (786 SE2d 840) (2016). Thus, a party may not recover for breach of contract against the State based on an implied contract, on a theory of quantum meruit, or by the parties' course of conduct even if a document exists supplying the material terms of the alleged contract. Id. at

7

82-83 (2). *RTT Assoc.* demonstrates that our Supreme Court means what it says when it has cautioned that "[t]he doctrine of sovereign immunity requires that the conditions and limitations of the statute that waives immunity must be strictly followed." (Citation and punctuation omitted.) Id. at 83 (2). "The burden of demonstrating a waiver of sovereign immunity rests upon the party asserting it." Id. at 82 (1).

The key question then is whether Neal has asserted the breach of a written contract with the State sufficient to waive sovereign immunity. In her Third Amended Complaint, Neal alleges that the Plan documents, including the Active Decision Guide, welcome letter from the Commissioner, and Summary Plan Description constitute a written contract between Neal and the State; that the Plan documents expressly incorporate the duty as set out in statute and by regulation to perform an actuarial analysis before changing Plan benefits and to recalculate premiums; and that the Department breached this contract. Neal also alleges that "the contract" requires rates to be based on actuarial costs of coverage without citing to any written document. Notably, Neal does not challenge the Department's right to change the Plan's benefit design according to the law but instead seeks "to enforce the

8

contractual and statutory obligations of [the Department] to recalculate the premiums after changing the benefit design."

On summary judgment, Neal cannot rely on mere allegations as she did in *Neal I,* but must now point to evidence sufficient to create a genuine issue of material fact that a written contract exists with the terms that Neal alleges have been breached in order to support her burden that the State has waived its sovereign immunity. See *SJN Properties, LLC v. Fulton County Bd. of Assessors*, 296 Ga. 793, 798 (2) (a) (770 SE2d 832) (2015) (once defendant on motion for summary judgment exposes an absence of evidence to support plaintiff's case, plaintiff must point to specific evidence giving rise to triable issue). We, thus, turn to the evidence in the record of a written contract.

In the trial court and on appeal, Neal has failed to point to any language in the Plan documents that expressly incorporates the statute or regulations. Instead, Neal relies on the SHBP regulations, which provide that the Plan documents are created "pursuant to the Health Insurance Acts;" that she was offered the Plan benefits "pursuant to the Health Insurance Acts;" and that the SHBP regulations are therefore evidence of a contract. Suffice it to say, just because the Plan was authorized by

9

statute and created pursuant to statute does not mean that any particular statutory duty is incorporated by reference into the Plan.

Although not directly on point, we find our recent decision in *Cobb County School Dist. v. Learning Center Foundation of Central Cobb, Inc.*, 348 Ga. App. 66 (821 SE2d 127) (2018) (physical precedent only), to be instructive. In *Learning Center*, our Court, in a divided opinion, found that the State had waived sovereign immunity for a claim that the school district had violated the Charter Schools Act because the district had entered into a written charter and OCGA § 20-2-2062 (1) expressly provided that "[b]y entering into a charter, a charter petitioner and local board shall be deemed to have agreed to be bound to all the provisions of [the Act] as if such terms were set forth in the charter." Id. at 68-69. Then-Judge Ellington dissented, finding that the Code section did not incorporate the Charter Schools Act into the charter as terms of the contract and, therefore, concluded that the plaintiff had "failed to carry its burden of demonstrating the existence of a written contract the terms of which the District allegedly breached." Id. at 72.

In contrast to the Charter Schools Act provision construed in *Learning Center*, Neal has pointed to no language in the statute, regulations, or Plan documents expressly incorporating any duty required by statute or regulation to perform an

10

actuarial analysis or recalculate premiums prior to changing benefits. The lack of any term in a written document expressly establishing or incorporating a duty to perform an actuarial analysis or recalculate premiums is particularly significant in this context where a written contract is required to waive sovereign immunity.[4] Accordingly, we find that Neal has failed to support her burden of showing that there is at least a genuine issue of material fact supporting her claim for a breach of a written contract sufficient to waive the State's sovereign immunity.[5] See *RTT Assoc.*, 299 Ga. at 82 (2).

We also reject Neal's novel assertion that the SHBP statutes and regulations themselves constitute a written contract.[6] The Georgia Constitution makes it clear that

---

[4] As described in Division 3, we also fail to find a statutory duty or duty imposed by regulation to perform the actuarial analysis or recalculate premiums as alleged by Neal.

[5] Because Neal has failed to allege the breach of a written contract, we find it unnecessary to determine whether the Plan documents may otherwise constitute a written contract for sovereign immunity purposes. But see *Neal I*, 334 Ga. App. at 855 (1) ("Read as a whole, the documents at issue here do not show that the parties entered into a signed, written contract.").

[6] Neal's reliance on *Fulton County v. Lord*, 323 Ga. App. 384 (746 SE2d 188) (2013), and *Fulton County v. Andrews*, 332 Ga. App. 473 (773 SE2d 432) (2015), is misplaced. Those cases, which dealt with county employees' claims for back pay under the Civil Service Act, clearly have no relationship to Neal's claims here under the SHBP. See *Neal I*, 334 Ga. App. at 859 (2).

11

only the General Assembly has the authority to waive sovereign immunity. *Ga. Dept. of Natural Resources v. Center for a Sustainable Coast, Inc.*, 294 Ga. 593, 599 (2) (755 SE2d 184) (2014). And nothing in the text of the SHBP statutes supports that the statutes or regulations constitute a written contract. Notably, the SHBP regulations actually provide for the opposite: "[i]n creating the SHBP, neither the Georgia General Assembly nor the Board of Community Health has waived its sovereign immunity." Ga. Comp. R. & Regs. r. 111-4-1-.10 (3). When the plain language of the statute does not provide for a specific waiver of government immunity nor the extent of such a waiver, courts cannot imply a waiver. *Sustainable Coast*, 294 Ga. at 603 (2). Accordingly, the trial court did not err in granting the Department's motion for partial summary judgment.

2. In her final enumeration of error, Neal asserts that the trial court erred in dismissing her claim for breach of the covenant of good faith and fair dealing implied in the parties' contract. However, because we find that there is no contract as alleged between Neal and the Department, this claim also fails. See *U.S. Bank, N.A. v. Phillips*, 318 Ga. App. 819, 824 (2) (734 SE2d 799) (2012) (implied covenant of good faith and fair dealing "cannot be breached apart from the contract provisions it

modifies and therefore cannot provide an independent basis for liability") (citation and emphasis omitted).

*Case No. A19A0227*

3. In this related case, the Board appeals after the trial court denied its motion to dismiss Neal's alternative claim for writ of mandamus. We review a trial court's ruling on a motion to dismiss de novo. *RES-GA McDonough, LLC v. Taylor English Duma LLP*, 302 Ga. 444, 446 (807 SE2d 381) (2017).

At the outset, we note that although sovereign immunity is a bar to Neal's claims for breach of contract, sovereign immunity does not bar mandamus relief. *Layer v. Barrow County*, 297 Ga. 871, 872 (1) (778 SE2d 156) (2015). Mandamus is an extraordinary remedy, and a "writ of mandamus may issue to compel a due performance if there is no other specific legal remedy for the legal rights." OCGA § 9-6-20. Thus, as our Supreme Court has explained, "[t]o be entitled to mandamus relief, a claimant must establish that (1) no other adequate legal remedy is available to effectuate the relief sought; and (2) the applicant has a clear legal right to such relief." (Citation and punctuation omitted.) *Ga. Motor Trucking Assn. v. Ga. Dept.*

13

*of Revenue*, 301 Ga. 354, 364 (2) (B) (801 SE2d 9) (2017). The burden of proving a clear legal right falls on the party seeking the writ of mandamus. *Love v. Fulton County Bd. of Tax Assessors*, 348 Ga. App. 309, 317 (2) (821 SE2d 575) (2018).

"A clear legal right to the relief sought may be found only where the claimant seeks to compel the performance of a public duty that an official or agency is required by law to perform." (Citation and punctuation omitted.) Id. at 364-65 (2) (B). See also *Ga. Assn. of Professional Process Servers v. Jackson*, 302 Ga. 309, 312 (2) (806 SE2d 550) (2017) ("For mandamus to issue, the law must not only authorize the act to be done, but must require its performance.") (citation and punctuation omitted). This duty must be "clear and well defined." *Love*, 348 Ga. App. at 317 (2). "The determination of whether official action is required depends on the law governing the subject matter in question." (Citation omitted.) *Jackson*, 302 Ga. at 313 (2).

We begin our analysis by examining what Neal claims were the Board's clear legal duties to perform. On remand from *Neal I*, Neal amended her complaint to add a claim for writ of mandamus to compel the Board to recalculate the costs of coverage to reflect the new actuarial value of the Gold and Silver levels and the increased

14

subsidy for the Bronze level members following the Board's changes to the Plan.[7] Neal alleged that this recalculation would entitle class members to a refund of premiums paid in excess of the difference between (1) the actuarial cost of coverage for the revised benefits of the Gold or Silver option and (2) the subsidy provided to members at the same level of coverage under the Bronze level.

Turning to the relevant statutory and regulatory framework, our General Assembly has authorized the Board to promulgate the SHBP under Chapter 18 of Title 45 of the Official Code of Georgia Annotated. OCGA §§ 45-18-1 *et seq.*; 20-2-880 *et seq.*; 20-2-910 *et seq.* Within Chapter 18 of Title 45, separate but similar provisions govern the health benefit plan for state employees (OCGA § 45-18-2); public school teachers (OCGA § 20-2-881); and public school employees (OCGA § 20-2-911), and permit the Board to adopt and promulgate rules and regulations for the Plan's administration, subject to delineated statutory limitations. See OCGA §§ 45-18-2; 20-2-881; 20-2-911.

---

[7] These changes included the addition of co-pays for pharmacy benefits and certain medical visits for all Gold, Silver, and Bronze members instead of co-insurance. No other changes, such as to HRA contributions, deductibles, or out-of-pocket maximums, were made.

Neal relies on several statutes to support her claim that the Board failed to comply with its statutory duty to recalculate the costs of coverage and premiums before changing benefits. First, she points to OCGA § 45-18-5 (d), which provides in relevant part:

> In administering this Code section, it shall be the responsibility of the board to develop rates for coverage based on the actual claims experience of the individuals covered by this Code section.

The individuals covered by this Code section are county officers and employees whose employers elect to contract for SHBP coverage under OCGA § 45-18-5 (a), as opposed to individual Plan members such as Neal. However, she maintains that she is nonetheless exercising her public right to enforce this section because the Board operates a single Plan for all eligible members. Pretermitting whether Neal has standing to enforce a statute that does not apply to her particular coverage, this statute does not establish a clear and well-defined legal duty to conduct an actuarial analysis and recalculate costs of coverage and premiums each time that the Board changes Plan member benefits and certainly does not address the situation here where co-

16

insurance rates were converted to co-payments for certain services.[8] See *Jackson*, 302 Ga. at 314 (2).

Next, citing OCGA §§ 45-18-3, 20-2-883, and 20-2-913, Neal asserts that the Board cannot charge two different rates for the same coverage. These statutes provide:[9]

The health insurance plan shall be designed by the board to:

(1) Provide a reasonable relationship between the hospital, surgical, and medical benefits to be included and the expected distribution of expenses of each such type to be incurred by the covered employees and dependents; and

---

[8] We also note that the governing regulations further provide what the Board is to consider in establishing premium rates without limiting the Board's discretion. For example,

The Board shall consider the **actuarial estimate** of the **SHBP costs *and* funds appropriated** to the various departments, boards, agencies, and school systems in establishing the Employee Deduction amount.

Ga. Comp. R. & Regs. r. 111-4-1-.02 (1) (c) (emphasis added).

[9] The three statutes are virtually identical. OCGA § 45-18-3 (2), however, refers to "reinsurance" rather than "coinsurance."

17

(2) Include reasonable controls, which may include deductible and coinsurance provisions applicable to some or all of the benefits, to reduce unnecessary utilization of the various hospital, surgical, and medical services to be provided and to provide reasonable assurance of stability in future years of the plan.

OCGA §§ 45-18-3; 20-2-883; 20-2-913. The plain language of these statutes prescribes no particular process by which the Board is to develop the health insurance plan or what constitutes a "reasonable relationship" between benefits and expenses, and to the contrary, supports that the Board has wide discretion in establishing reasonable controls for the Plan to remain economically viable. Thus, these statutes cannot provide a basis for mandamus relief. See, e.g., *Bibb County v. Monroe County*, 294 Ga. 730, 737-38 (2) (755 SE2d 760) (2014) ("mandamus is proper to compel the undertaking of some official action to which the petitioner has a clear legal right, but it is not proper either to prescribe how that action is taken or to preordain its result").

Finally, Neal relies on OCGA §§ 45-18-14 (a), 20-2-892 (b), and 20-2-920 (b) to assert that because Plan members must receive the same employer contribution or subsidy regardless of their Plan option, the premiums paid by the employee must fluctuate according to the cost of coverage. However, these statutes authorize premiums to be withheld from salary payments and govern contributions that

18

employers are required to make to the health insurance fund, which were not affected by the Board's 2014 changes. They do not require the sort of actuarial analysis or recalculation of premiums that Neal argues the Board had a duty to undertake. See *Cochran v. Kendrick*, 297 Ga. 655, 657 (1) (778 SE2d 1) (2015) (mandamus claim fails where claimant fails to show a "clear legal duty").

In sum, we agree with the Board that in seeking mandamus relief, Neal attempts to impose requirements beyond the plain language of the statutes themselves. And we find that, based on the facts of this case and the Board's statutorily granted discretion, that its actions were not arbitrary or capricious, such that mandamus would lie. See *Ga. DOT v. Peach Hill Props., Inc.*, 278 Ga. 198, 201 (2) (599 SE2d 167) (2004) ("mandamus is in order when a public officer grossly abuses his or her discretion"). See *Schrenko v. DeKalb County School Dist.*, 276 Ga. 786, 794 (3) (582 SE2d 109) (2003) ("In general, mandamus relief is not available to compel officials to follow a general course of conduct, perform a discretionary act, or undo a past act."); *Lansford v. Cook*, 252 Ga. 414, 414 (314 SE2d 103) (1984) ("Mandamus is a harsh remedy and ought not be granted unless a defect in legal justice would ensure from failure to grant it."). Accordingly, the trial court erred in

19

denying the Board's motion to dismiss Neal's petition for mandamus, and we reverse that portion of its order.[10]

*Judgment affirmed in Case No. A19A0369; judgment reversed in Case No. A19A0227. Doyle, P. J., and Coomer, J., concur.*

---

[10] Because we find that Neal has failed to prove that she has a clear legal right to the relief she seeks, we do not reach the Board's remaining arguments that Neal failed to make a formal demand; Neal improperly seeks to undo past acts; and Neal's claim is barred by laches.