**FIRST DIVISION**
**BARNES, P. J.,**
**MILLER, P.J and HODGES, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 30, 2019**

# In the Court of Appeals of Georgia

A19A0802. KELLY et al. v. BOARD OF COMMUNITY HEALTH et al.

HODGES, Judge.

This class action arose in response to reductions made in December 2011 by the Board of Community Health to the State Health Benefit Plan (SHBP)'s retiree health insurance subsidy. After plaintiff retirees brought an action seeking class certification as well as monetary and injunctive relief, the trial court granted a motion to dismiss filed by the Board of Community Health and its individual members ("defendants") on grounds including that plaintiffs' claims were barred by sovereign immunity. On appeal, plaintiffs argue that the trial court erred because the Board's previous resolution granting them a subsidy amounted to a written contract which could not

be revoked without causing them financial harm and violating their equal protection rights, and for which mandamus is a proper remedy. We find no error and affirm.

On appeal from the grant of a motion to dismiss, "all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor." (Footnote omitted.) *Cleveland v. MidFirst Bank*, 335 Ga. App. 465, 465 (781 SE2d 577) (2016). "If within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient." (Footnote omitted.) Id. at 465-466.

Although we thus view the record in favor of plaintiffs, the relevant facts are not in dispute. Before December 8, 2011, retirees were entitled to a so-called "Annuitant Basic Subsidy Policy" that provided a 75% subsidy for an annuitant with at least 10 years of service. After a study determined that the Department of Community Health would not be able to sustain the subsidy at this level without endangering the financial health of the SHBP, the Board adopted a resolution on December 8, 2011, that under its new "Annuitant Years of Service Subsidy Policy," those retirees "who did not have five [y]ears of [s]ervice on January 1, 2012," would receive a subsidy of 15% for 10 years of service, increasing with each year of

additional service to a maximum of 75% for 30 years of service. The Board noted that its announcement of the new policy "does not constitute a promise or contract of any kind" and that "[a]ny subsidy policy adopted by the Board may be changed at any time by Board resolution[] and does not constitute a contract or promise of any amount of subsidy." As a result of this change, plaintiffs, who had the minimum ten years of service at the time of their retirement but less than five years of active service as of January 1, 2012, receive a much lower annuitant subsidy than other retirees with the same number of years of service. In December 2016 and February 2017, the Commissioner notified SHBP members of these changes.

Plaintiffs brought their action for breach of contract and mandamus relief in December 2017 and later amended the complaint to include three counts against Board members in their individual capacities as well as constitutional claims for equal protection and 42 U.S.C. § 1983. Defendants moved to dismiss the complaint as amended, which the trial court granted on the ground that sovereign immunity barred plaintiffs' claims and that they had failed to state a claim for mandamus relief. This appeal followed.

1. *Ex contractu waiver of sovereign immunity.* Plaintiffs first assert that the trial court erred when it concluded that they had not established a waiver of sovereign immunity under the ex contractu provision of the Georgia Constitution. We disagree.

In our recent decision in *Boyd v. Neal*, 350 Ga. App. 274 (828 SE2d 650) (2019), we summarized the law governing claims of contractual waivers of sovereign immunity as follows:

> The Georgia Constitution provides broad sovereign immunity for the State: "Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). But sovereign immunity is waived in limited circumstances, and specifically, for contract actions, sovereign immunity is waived: "as to any action ex contractu for the breach of any written contract now existing or hereafter entered into by the state or its departments and agencies." Ga. Const. Art. I, § II, ¶ IX (c). See also OCGA § 50-21-1 (a) ("The defense of sovereign immunity is waived as to any action ex contractu for the breach of any written contract . . . entered into by the state, department and agencies of the state, and state authorities.").
>
> Our Supreme Court has recently explained the relationship between common law rules of contract and what constitutes a written contract

4

sufficient to waive sovereign immunity: "General rules of contract law that might otherwise support a claim for breach of contract damages between private parties . . . will not support a claim against the state or one of its agencies if the contract is not in writing so as to trigger the waiver of sovereign immunity." *Ga. Dept. of Labor v. RTT Assoc., Inc.*, 299 Ga. 78, 82 (2) (786 SE2d 840) (2016). Thus, a party may not recover for breach of contract against the State based on an implied contract, on a theory of quantum meruit, or by the parties' course of conduct even if a document exists supplying the material terms of the alleged contract. Id. at 82-83 (2).

*Boyd*, 350 Ga. App. at 277 (1). Finally, in order to establish a waiver of sovereign immunity under the ex contractu provision, a claimant "has the burden of showing that the contract sought to be enforced is in writing and contains all of the terms necessary to constitute a valid contract." (Citations omitted.) *Ga. Dept. of Community Health v. Data Inquiry, LLC*, 313 Ga. App. 683, 685 (1) (722 SE2d 403) (2012).

The regulatory scheme under which the SHBP operates includes Ga. Comp. R. & Regs. r. 111-4-1-.10,[1] which provides in relevant part:

(1) *Creation of Benefit Schedule*. The Board is authorized to establish benefit schedules for Options to be included in a health benefit plan for

---

[1] This regulation was last amended in 2010, before the administrative acts at issue here.

5

eligible persons as defined in Georgia law. Benefit schedules shall comply with applicable state and federal law. . . .

(3) *Actions. In creating the SHBP, neither the Georgia General Assembly nor the Board of Community Health has waived its sovereign immunity. Thus no action either in law or in equity, can be brought or maintained against the State of Georgia, the Board of Community Health, or any other department or political subdivision of the State of Georgia to recover any money under this Plan.* In like fashion, no suit may be maintained against any officials or Employees of these bodies if the ultimate financial responsibility would have to be borne by public Funds from the General Treasury, the health benefit Funds or elsewhere. . . .

(b) The Board of Community Health *reserves the right to modify its Benefits, Coverages, and eligibility requirements at any time, subject only to reasonable advance notice to its Members.* When such a change is made, it will apply as of the effective date of the modification to any and all charges which are incurred by Members *from that date forward*, unless otherwise specified by the Board of Community Health.

(Emphasis supplied.)

As a preliminary matter, plaintiffs have cited to no part of any previous resolution, arguably supplanted by the 2011 resolution at issue, showing any specific waiver or written contract term. On this ground alone, plaintiffs' claims would fail.

6

See *RTT Assoc.*, 299 Ga. at 82-83 (2) (a party may not recover for breach of contract against the State based on an implied contract, on a theory of quantum meruit, or by the parties' course of conduct even if a document exists supplying the material terms of the alleged contract).

More important is the plain language of the applicable regulation, which, as this Court noted in *Boyd*, shows that no adoption or modification of any SHBP benefit could amount to a waiver of sovereign immunity:

> The Georgia Constitution makes it clear that only the General Assembly has the authority to waive sovereign immunity. *Ga. Dept. of Natural Resources v. Center for a Sustainable Coast, Inc.*, 294 Ga. 593, 599 (2) (755 SE2d 184) (2014). And *nothing in the text of the SHBP statutes supports [the proposition] that the statutes or regulations constitute a written contract*. . . . When the plain language of the statute does not provide for a specific waiver of government immunity nor the extent of such a waiver, courts cannot imply a waiver.

(Emphasis supplied; citation and punctuation omitted.) *Boyd*, 350 Ga. App. at 279 (1). Because, as we held in *Boyd*, "nothing" in the text of the SHBP statutes supports the proposition that a regulation, revised or not, could "constitute a written contract," the trial court did not err when it concluded that plaintiffs had no basis for asserting an ex contractu waiver of the State's sovereign immunity arising from the December

7

2011 resolution of the Board, which revised the regulations at issue. Id. (rejecting appellants' assertion that "the SHBP statutes and regulations themselves constitute a written contract," and affirming a grant of summary judgment to the Department of Community Health on appellant's claims for breach of contract and of the covenant of good faith and fair dealing).

2. *Equal protection.* Plaintiffs' equal protection claim asks for "injunctive relief against the Board . . . to prevent the Board Members from providing a different SHBP annuitant subsidy to any retiree that began [his or her] employment on or before December 8, 2011," as well as declaratory relief to the same effect.[2] Plaintiffs assert that neither sovereign nor official immunity shields the Board members from liability in their individual capacities as to the Board's action in changing their SHBP benefits, which violated their equal protection right. Again, we disagree.

Our Supreme Court has held that "[t]he doctrine of sovereign immunity usually poses no bar to suits in which state officers are sued in their individual capacities for

[2] This Court, and not the Supreme Court, has jurisdiction over this issue. See *Williams v. State*, 277 Ga. App. 850, 851 (627 SE2d 891) (2006) (noting that we had jurisdiction and affirming the dismissal of plaintiff's complaint because "plaintiffs failed to assert valid equal protection claims under existing Supreme Court precedent"), and *Ga. Oilmen's Assn. v Dept. of Revenue*, 261 Ga. App. 393, 394 (582 SE2d 549) (2003) (concluding that we had jurisdiction to determine the constitutionality of a regulation).

official acts that are alleged to be unconstitutional." *Ga. Dept. of Human Svcs. v. Addison*, 304 Ga. 425, 431 (2) (819 SE2d 20) (2018), quoting *Lathrop v. Deal*, 301 Ga. 408, 434 (III) (b) (830 SE2d 179) (2017); see also *Polo Golf and Country Club Homeowners Assn. v. Cunard*, — Ga. — (1) (a) (Case No. S19A0655, decided September 23, 2019) (reversing a grant of a motion to dismiss on the ground of sovereign immunity when plaintiffs sought "prospective relief" for allegedly unconstitutional acts by county officers). Likewise,

> official immunity generally is no bar to claims against state officers in their individual capacities for injunctive and declaratory relief from the enforcement of laws that are alleged to be unconstitutional, so long as the injunctive and declaratory relief is only prospective in nature.

*Lathrop*, 301 Ga. at 434-435 (III) (b); see also id. at 444 (noting the lack of any Georgia precedent applying official immunity "to bar a suit for injunctive or declaratory relief"); *Love v. Fulton Cty. Bd. of Tax Assessors*, 348 Ga. App. 309, 320 (4) (821 SE2d 575) (2018) (reversing the application of official immunity to claims for prospective relief against tax board members).[3]

---

[3] Plaintiffs' equal protection claim pursuant to 24 USC § 1983 ("Section 1983") is also not subject to the defense that the Board Members are not "persons" within the meaning of the Section. See *Hafer v. Melo*, 502 U. S. 21, 30-31 (II) (B) (112 SCt 358, 116 LE2d 301) (1991) (state officials sued in their individual capacities are "persons"

Nonetheless, plaintiffs' claim is not viable because "[t]he due process and equal protection clauses of the federal and [Georgia] constitutions protect only rights, not mere privileges, and discrimination in the grant of privileges is not a denial of equal protection to those who are not favored." *Woodard v. Laurens County*, 265 Ga. 404, 406 (1) (456 SE2d 581) (1995). For the reasons stated in Division 1 above, plaintiffs cannot show that they had a *right* to future health insurance subsidies: the adjustment of such subsidies by regulation does not amount to an "enforcement of law" sufficient to activate equal protection concerns. See *Lathrop*, 301 Ga. at 435 (III) (b). It follows that plaintiffs' equal protection claim fails. See *Woodard*, 265 Ga. at 406 (1) (because a waiver of sovereign immunity was a "mere privilege," tort plaintiffs were not authorized to challenge disparities in the extension of that privilege on equal protection grounds).

3. *Mandamus*. "Mandamus is an extraordinary remedy that is available only where a litigant seeks to require a public official to perform an act or fulfill a duty that is required by law and where 'there is no other specific legal remedy.' OCGA § 9-6-20." *Clayton Cty. Bd. of Commrs. v. Murphy*, 297 Ga. 763, 764 (778 SE2d 193) (2015). We note that mandamus claims are not barred by the doctrine of sovereign

within the meaning of Section 1983).

10

immunity. See *Boyd*, 350 Ga. App. at 283 (3). However, we find that the trial court did not err when it dismissed plaintiffs' claim for mandamus relief because, as we have explained above, they have not shown any "clear legal right to the relief being sought." (Citation and punctuation omitted.) *Murphy*, 297 Ga. at 764 (reversing the grant of a writ of mandamus when a petitioner had failed to show a clear legal right to that remedy); *Boyd*, 350 Ga. App. at 283 (3) (same).

*Judgment affirmed. Barnes, P. J., and Miller, P. J., concur.*